H. J. Krupp, Trading as H. J. Krupp & Company, Appellee, v. National Fur Dressing & Dyeing Company, Appellant.

Gen. No. 32,781.

Opinion filed November 7, 1928.

Moses, Kennedy, Stein & Bachrach, for appellant; Hirsch E. Soble, of counsel .

Peden, Kahn & Murphy, for appellee; David Silbert and K. B. Czarnecki, of counsel.

Mr. Presiding Justice Holdom delivered the opinion of the court.

This action involves 777 raw mink skins which the plaintiff delivered to defendant for dressing and dyeing at an agreed price of 45 cents per skin for such work. Said skins were delivered to defendant May 25, 1927. In the receipt for the skins they were valued at $25 each. Plaintiff's suit was to recover the value of said skins, as so agreed, totaling the sum of $19,425. Plaintiff demanded of defendant that sum, which defendant refused to pay.

It appears that after the delivery by plaintiff of said mink skins, they were stolen from defendant. Defendant filed a set-off for work and labor rendered in dressing and dyeing said skins at an agreed rate of 45 cents a skin of the total amount of $349.65, and defendant claims the sum of $10.24 for express charges incurred and paid by defendant.

Plaintiff avers in his statement of claim that there was an express agreement that defendant keep the said

mink skins insured to their full value against loss or damage by fire, burglary, holdup or robbery according to the standard form of policy for the benefit of the owner of said skins delivered to the defendant until the same were returned to the plaintiff.

In the statement of claim there is the following averment: ''Plaintiff further alleges that he sues to recover on an account stated entered into by and between the plaintiff and the defendant at Chicago, Illinois, on the 25th day of May, 1927, the sum of $19,425, being the value of 777 raw mink skins delivered to the defendant to be dressed and dyed at a stipulated price of $25 each, at which price the defendant accepted said skins to be returned to the plaintiff after having been dressed and dyed and within a reasonable time.''

There was a trial before court and jury on issues joined on the claim and the set-off, and there was a verdict in favor of plaintiff and against the defendant for the amount of the plaintiff's claim, less the set-off, of $19,075.35. On this verdict there was a judgment after the overruling of motions for a new trial and in arrest of judgment.

After the verdict the present attorneys came into the case (although they took no part in the actual trial of the case in the municipal court). From the foregoing judgment defendant has prayed and perfected this appeal.

The errors assigned upon the record and argued in this court are as follows:

1. The court erred in overruling defendant's motion for a directed verdict at the close of all the evidence.

2. The court erred in refusing to permit defendant's counsel to cross-examine the plaintiff with regard to the purchase price of the skins in controversy.

3. The court erred in overruling defendant's motion for a new trial, and in denying defendant's motion to vacate and set aside the order overruling defend-

ant's motion for a new trial and to allow said motion for new trial, and in entering judgment on the verdict.

4. The verdict and judgment are contrary to law.

It was stipulated on the trial that the skins, after they had been dressed, were put on an automobile truck of defendant to be delivered to plaintiff, and while in course of carriage the robbery occurred, and the skins were stolen and have never been found.

The real nub of this controversy is whether, as claimed by plaintiff, the skins were received by defendant under its special bailment agreement stating the value of the skins so received, or, as claimed by defendant, that it was an ordinary transaction of bailment where defendant was only bound to use ordinary care, and that if the skins were lost or destroyed without its fault the loss falls on the plaintiff owner, and that the skins having been lost without its fault the loss falls upon the owner plaintiff.

The court did not err in denying defendant's motion for an instructed verdict at the close of all the proofs, as at that time the motion did not present a question of law for the court in the then condition of the evidence but one of fact for the jury.

The facts in this case are easily distinguishable from *Bear v. Young*, 247 Ill. App. 625. In the *Bear* case there was no contract, as in the case at bar, between the parties. In the *Bear* case the robbery of the goods from the defendant was without his negligence, and consequently in the absence of a contract controlling defendant's liability, the burden of showing that the goods were lost as a result of the negligence of defendant was upon plaintiff, and lacking such proof, liability was not under the law of bailment saddled upon the defendant. In the case at bar there is a contract, the legal construction of which governs the rights of the parties.

The rights of the parties are governed in accord with the legal import and effect of the following writings, the first of which was sent by the plaintiff to defendant, and is in the following words:

"Memorandum for your Inspection

H. J. KRUPP & Co.

Fur Merchants

115 S. Dearborn Street,

No. 6812

Chicago, May 25, 1927

Consigned to National Fur Dressing Co.

Terms      Shipped via      Valuation $      Pkgs.

| Lot No. | Quantity | Description | Price | Amount | Total |
|---------|----------|-------------|-------|--------|-------|
| R101 | 777 | Raw Mink | 25.00 each | | |

Stamped HK in head to be dressed cased
Natl Fur D & D Co.

These goods remain the property of H. J. Krupp & Co. until a regular invoice is issued. The goods are at your risk for loss by fire or theft. Goods returned must be intact in original bundles."

The defendant in acknowledging the receipt of the foregoing wrote as follows:

"NATIONAL FUR DRESSING & DYEING Co.

1402-04-06-08 North Halsted St.

Chicago

May 25th, 1927

H. J. Krupp & Co.,
115 S. Dearborn St.,
Chicago, Illinois.
Gentlemen:

We herewith acknowledge with thanks the receipt of the following skins on

| Lot No. | Quantity | Kind of Skins | Work | Our Mark |
|---------|----------|---------------|------|----------|
| 4 | 777 | Mink | to be dressed | HK on head |

These skins are stamped with your mark.

We do not guarantee this mark to be visible after dressing and/or dyeing.

This order is accepted only upon the conditions printed on the reverse side of this letter, to which we call your Special Attention.

Respectfully submitted,

National Fur Dressing & Dyeing Co.

By B. V.''

The conditions referred to in the foregoing were printed on the reverse side thereof and are in substance that:

''The undersigned will return the merchandise upon the performance of the work in good, workman-like manner.

''All claims with respect to this merchandise must be made in writing to the undersigned within five days after the delivery of the merchandise to the owner.''

Then follows a clause regarding arbitration, which is not in controversy in this case.

Succeeding the arbitration clause is the following:

''The undersigned will keep insured to full value against loss or damage by fire, burglary, hold-up or robbery, according to the standard form of policy, for the benefit of the owner, the merchandise hereby delivered until returned to the owner.

''No conditions, terms or representations will be binding other than those contained herein. * * *

National Fur Dressing & Dyeing Co.''

The two documents last quoted created a special bailment between the parties which fixed their rights and obligations, and we hold as a matter of law that the bailment was special and so made by the contract between the parties evidenced as above set out.

There is no difficulty regarding the solution of the facts which determine the rights of the parties. They are controlled by the writings between them. The skins were delivered by plaintiff to defendant to be dressed

and dyed, and when so treated to be returned to the plaintiff. This defendant recognized by dressing and dyeing them and putting them on an autotruck in charge of its servants to be returned to the plaintiff at his place of business, and there is no dispute about what happened, for the parties upon the trial stipulated regarding the same in the following words:

"It is hereby stipulated and agreed, by and between the parties hereto, by their respective counsel, that on June 4, 1927, the 777 skins alleged to have been shipped from the plaintiff to the defendant for dressing were in the possession of the defendant company by its agents, being redelivered to the plaintiff's in its, the defendant's, truck, and while so being delivered the said truck was held up by armed men, unknown to either the defendant or the plaintiff and by said armed men, the said skins taken by said armed men, that the said skins were never returned to the plaintiff, nor was the value therefor paid to the plaintiff by the defendant."

Under the agreement of bailment it was stipulated that defendant should keep the goods insured to the full value against loss or damage by fire, burglary, holdup or robbery for the benefit of plaintiff until the goods were returned to the owner, viz., the plaintiff. It furthermore appears from the evidence that the goods were so insured, and defendant realizing its obligation applied to plaintiff for information regarding said goods, so that it might make proofs of loss under the policy. This information plaintiff furnished, and it would seem from the evidence that proofs were made in accord with such information by defendant.

Defendant by paragraph 8 (stricken) of its affidavit of defense deposed "that defendant within a reasonable time after the loss of said skins notified the plaintiff herein to furnish and deliver to the defendant and to the said Globe & Rutgers Insurance Company any and all information necessary regarding the cost and

value of said skins and that the defendant thereafter in accordance with the provisions of said policy of insurance did on or about the 15th day of July, 1927, in writing file with the said Globe & Rutgers Insurance Company proof of loss and  *  *  *  for compensation for the full value of said mink skins, in accordance with the information furnished to this defendant by the plaintiff herein." In paragraph 9 of its said affidavit (not stricken) it deposes that "This defendant further alleges that it has in all respects complied with the provisions of the insurance policy  *  *  *."

Whether the amount due defendant under the insurance was paid by the insurance company does not appear, but it does appear that the proofs were made by the defendant. For aught that appears to the contrary, defendant collected and retained the insurance money. If it did, it did so probably relying upon the effectiveness of its defense to defeat plaintiff's claim.

The president of defendant testified that the theft occurred on Saturday afternoon, June 4, 1927. "I saw Mr. Krupp on the following Tuesday morning. We carried insurance on the merchandise and the insurance company sent over their adjuster to see what the loss consisted of and the value of the loss and I went with the insurance adjuster. I told Mr. Krupp the furs were stolen."

The defendant lays much stress in argument on what it contends regarding insurance, that it was an agreement to procure a policy of insurance in accordance with the requirements thereof, and does not constitute an agreement of insurance. We think the defendant put its own construction on that part of the agreement by admitting that it procured insurance. The refinement of counsel's distinctions reminds one of the unsolved problem "twixt tweedle dum and tweedle dee." We are content to abide by the construction which defendant placed upon its contract with plaintiff in this regard.

Touching the liability of defendant in this special bailment agreement between the parties and the extent of its liability thereunder and the controlling principles defining the rights of the parties, an interesting case is *Sun Printing & Publishing Ass'n v. Moore,* 183 U. S. 642, in an opinion by the late Chief Justice White, in which it is said:

"It is elementary that, generally speaking, the hirer in a simple contract of bailment is not responsible for the failure to return the thing hired, when it has been lost or destroyed without his fault. Such is the universal principle. This rule was tersely stated by Mr. Justice Bradley in *Clark v. United States,* 95 U. S. 539, 24 L. Ed. 518, where it was said (p. 542, L. Ed. p. 519):

" 'A bailee for hire is only responsible for ordinary diligence and liable for ordinary negligence in the care of the property bailed. This is not only the common law, but the general law on the subject. * * * '

"But it is equally true that where by a contract of bailment the hirer has, either expressly or by fair implication, assumed the absolute obligation to return, even although the thing hired has been lost or destroyed without his fault, the contract embracing such liability is controlling, and must be enforced according to its terms."

The contract between the parties to this suit is equally as controlling as was the contract held to be in the case *supra.* Another supporting authority is *Sturm v. Boker,* 150 U. S. 312, in which, *inter alia,* it was held that " * * * a bailment or compensation to be received therefor being a sufficient consideration for such an undertaking."

In *Dermott v. Jones,* 2 Wall. (U. S.) 1, it is said that:

"It is a well settled rule of law, that if a party by his contract charge himself with an obligation possible to be performed, he must make it good, unless its performance is rendered impossible by the act of God,

the law, or the other party. Unforeseen difficulties, however great, will not excuse him.''

The question of the value of the mink skins was before the jury in testimony regarding such value at the time of the loss, such testimony of value being given by the witnesses for both parties, and the court in its charge to the jury directed their attention to such value. It is true that the court limited cross-examination of the plaintiff's president regarding value. However, counsel made no offer or statement as to what he desired to prove regarding such values, so that we doubt if the point is reserved for our review. Be that as it may, the contract of the parties agreed upon the value, and we think that that contract, in the absence of fraud, was binding upon the parties in the trial of the case, and furthermore there is very little discrepancy in the testimony of the contending parties regarding such value.

Complaint is made of the court's refusal to give six instructions to the jury proffered by defendant. The court instructed the jury orally as it had a right to do under the Municipal Court Act, Cahill's St. ch. 37, ¶ 389 et seq., and an examination of all the instructions demonstrates that the material portions of the proffered instructions which the court refused were covered by the court's oral instructions to the jury.

Paragraph 8 of defendant's affidavit of defense was on motion stricken by the court. Whether such order was erroneous, the fact remains that every material matter set up therein was covered by defendant's evidence in the case, so that it suffered no prejudice by reason of such action of the trial court and its order in such regard is not sufficient error to warrant this court in reversing the case.

The court did not err in overruling defendant's motion for a new trial and in arrest of judgment and in entering judgment on the verdict. Neither did the

court err in overruling defendant's motion to vacate and set aside the order overruling defendant's motion for a new trial and to allow said motion for new trial, and in entering judgment on the verdict. This motion was made by new counsel being injected into the case at that time. The case had been disposed of and in the exercise of a sound judicial discretion the court justly refused to grant what was in effect a motion for a rehearing on matters already disposed of.

It appears to us from a careful examination of the record and all that has been said in regard to the errors assigned, that the judgment under well-settled principles of law does justice between the parties. Therefore the judgment of the municipal court of Chicago is affirmed.

*Affirmed.*

WILSON and RYNER, JJ., concur.