People of the State of Illinois, Plaintiff-Appellee, v. Jose Luna, Defendant-Appellant.

Gen. No. 49,662.

First District, Second Division.

April 12, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

An indictment charged that on September 8, 1962, Roberto L. Alvarado, Jose Luna, Raul Esparza and Pete Perez committed the offense of the sale of narcotics to Paul W. Hemphill. A trial of Jose Luna resulted in a verdict of guilty as charged and a sentence to the State Penitentiary for a term of 15 to 30 years. He appeals from the judgment.

On the morning of September 7, 1962, Paul W. Hemphill, an Illinois Narcotics Inspector, was introduced to Jose Luna by an informer named Jerry Galloway. Hemphill was introduced as "Tommy," [Hemphill's testimony] or as "Paul," [defendant's testimony]. Luna and Hemphill discussed the sale of narcotics at $1,100 an ounce. Luna stated that the narcotics were of a very high grade and that one ounce could be cut into six ounces. A meeting was arranged for 9:00 that evening. At approximately 10:00 p. m., Luna entered the car of Hemphill and directed him to drive to the vicinity of 18th and Halsted Streets in Chicago. They entered a tavern, where Luna spoke to two men, Saginaw and Esparza. No sale was made that evening since a third man, Alvarado, was detained by the police on another charge. A second meet-

293

ing was arranged for the following morning, September 8, 1962, at 10:00. Hemphill gave Luna $1,000 in prerecorded money. Luna and Hemphill drove to the vicinity of 18th and Halsted Streets. Luna walked away from the car. He met Saginaw and Alvarado. Alvarado left, but in 30 minutes returned and handed an envelope to Luna. The defendant returned to Hemphill's car, entered and gave him the envelope. Hemphill drove a few blocks and signaled to other narcotic's agents. Luna was arrested and part of the recorded money was found on his person. The envelope given by Luna to Hemphill was examined and found to contain narcotics.

██ The first point presented by the defendant is that the trial judge violated his rights to equal protection of the law as implemented by Ill Rev Stats 1965, c 38, § 121–13. The case was assigned to Judge Irving Landesman who sustained defendant's motion to suppress the confession. Subsequently the case was assigned to Judge Charles R. Barrett and he presided during the trial. In the trial before Judge Barrett defendant testified. The defendant's confession which had been suppressed was not introduced into evidence in the trial. It did not become a part of the record. The defendant was given a copy of the confession. The prosecutor interrogated the defendant as to questions propounded to him and answers that he made in the hearing on the motion to suppress the confession. This was for the purpose of impeaching the defendant by showing prior inconsistent testimony. We do not think any right of the defendant was violated by the court's denial of his motion (presented after judgment) for a transcript of the hearing on the motion to suppress the confession. The official court reporter was available to him. A transcript of the proceedings at the hearing on the motion to suppress was also available to defendant at the time of trial. No motion for a transcript of these proceedings was made during the trial. In his written motion for a new trial the

294

defendant did not mention any alleged prejudice for failure to furnish a transcript of the proceedings on the motion to suppress the confession.

 The second point maintained by the defendant is that the court committed error in failing to correct the record. The confession was not introduced into evidence in the trial. On March 10, 1964, motions for a new trial and in arrest of judgment were denied and the defendant was sentenced. On January 13, 1965, appellant's counsel moved to correct the record by making the confession a part thereof. Attached to the motion was the confession which by this procedure appears in the record. As the confession did not become a part of the trial record the court was right in refusing to have the confession made a part of the record.

The next point urged by the defendant is that the court committed reversible error by allowing the People to introduce evidence in violation of his constitutional rights. The defendant says that the State, under the camouflage of impeachment, in effect, introduced the confession into evidence; that the State introduced into evidence testimony given by defendant at the hearing to suppress the confession and that this testimony was in content identical with the confession, citing Safarik v. U. S., 62 F2d 892, 897 (8th Cir 1933). The propriety of the impeaching testimony cannot be tested by comparing the confession (which had been excluded by the ruling of Judge Landesman) with the impeachment testimony. The issue must be resolved by examination of the testimony on direct, cross-examination and in rebuttal. Defendant testified that Galloway often asked if he knew anyone who sold narcotics and on September 7, 1963, Galloway introduced him to Galloway's partner, Hemphill. Hemphill and Galloway said that they wanted to do business and defendant arranged it with Esparza. The merchandise asked for was drugs. Esparza previously called defendant and said he had drugs to sell. The defendant

stated that he did not know how much it would cost. Defendant further testified that on September 8, 1962, Hemphill gave him a bundle of money to give to Alvarado. In return for the money Alvarado gave defendant $100 and a brown paper package. The defendant delivered both to Hemphill but was told to keep the $100. Defendant testified that he did not know anything about the sale of drugs prior to this transaction. On cross-examination defendant said that he did not know how much money was given to him by Hemphill and he did not remember testifying on July 1, 1963 [the hearing on the motion to suppress] that he was given $1,000 and that he counted it. He also testified that he did not remember previously testifying that Hemphill gave him $1,000 to buy an ounce of heroin. Defendant further stated that he did not recall previously testifying that he kept $100 in his pocket when he returned with the package to Hemphill. In rebuttal it was stipulated that if the court reporter were called he would testify that on July 1, 1963, the defendant testified: (1) He was given $1,000 and counted the money, (2) He knew the $1,000 was to purchase one ounce of heroin, and (3) When he returned to Hemphill, defendant put $100 in his pocket.

 Proof of inconsistent statements is proper to cast doubt on a witness' testimony. People v. Morgan, 28 Ill2d 55, 63, 190 NE2d 755. Impeachment testimony is proper even though a defendant testifies that he does not remember giving prior testimony. People v. Bush, 29 Ill2d 367, 373, 194 NE2d 308. We think that the rebuttal evidence was properly admitted. The case of Safarik v. U. S., 62 F2d 892 (8th Cir 1933) is not applicable to the factual situation of the case at bar. There, although, a motion to suppress evidence was sustained, the government used statements made by the defendant in a written motion to suppress and affidavits attached thereto as admissions against interest. On appeal the court held that such a practice violated the Fourth and Fifth Amend-

296

ments. In order to avail himself of the Fourth Amendment the defendant was improperly required to waive his protection under the Fifth Amendment. In Heller v. U. S., 57 F2d 627, 629 (7th Cir 1932) the claim was made that testimony of the defendant on a motion to suppress was inadmissible for any purpose at trial. On review the court stated that if the statements in question were made out of court they were certainly admissible and the rule should not be different because made under oath and in court. The defendant therein, as in the case at bar, was not obligated to testify on the motion to suppress. The right to cross-examination is a basic part of our judicial system. Cross-examination would be unduly restricted should the courts hold that a witness' credibility could not be impaired by evidence of prior inconsistent testimony. Proof of inconsistent statements made by People's witnesses on a motion to suppress is an appropriate method of impeachment. A contrary rule should not be applied where the inconsistent statements were made by defendant who also elected to testify at the trial. Our Supreme Court went further in Miller v. People, 216 Ill 309, 312, 74 NE 743, in holding that statements and admissions of defendant at a first trial which resulted in a mistrial, were properly admitted in a second trial, although the defendant did not testify in the second trial. In the case at bar no testimony identical to the confession was admitted into evidence. The People were allowed to present rebuttal evidence as to inconsistent testimony at the hearing on the motion to suppress. We are of the opinion that the trial court did not err in allowing the State to introduce the impeaching testimony.

 We turn to the contention of the defendant that the trial court prevented him from placing before the jury substantial and competent evidence that he was entrapped by a State special employee. The defendant was interrogated as to the content of conversations he had with Jerry Galloway, the special employee. The

court sustained the People's objection to this testimony on the basis that it was hearsay. Defendant says that in this ruling the court was misled into reversible error. The defendant asserts that the conversation with the special employee was direct evidence on the issue of entrapment and that it was the only substantial evidence of entrapment available to the defendant. Under appropriate issues and facts a witness may testify as to the content of a conversation he had with an out of court declarant in order to demonstrate that the conversation induced his conduct. Defendant testified that he had known Galloway for 7 years and that Galloway asked him if he knew anyone who sold narcotics. The defendant testified that he saw Galloway with Hemphill on September 7, 1962. Galloway said that Hemphill was his partner and that they wanted to do business. Defendant agreed to tell them the price of the narcotics when he received a call from his friends and to take them to Esparza. Additional conversations with Galloway were excluded upon objection by the State that the conversations were hearsay. The defendant's trial lawyer failed to make an offer of proof pertaining to the conversation between Galloway and Luna. No suggestion was made in the trial court that Galloway was a user of or had a need for narcotics or that he made persistent requests for narcotics supported by tales of suffering. No appeal to sympathy was alleged. Nothing was presented to apprise the trial court of an entrapment issue or of the purpose and materiality of the answers to the questions. Friendship with an informer does not raise the question of entrapment. People v. Hatch, 49 Ill App2d 177, 185, 199 NE2d 81. It was decided in People v. Wells, 25 Ill2d 146, 148, 182 NE2d 689, that although deception by governmental agents was used this does not comprise entrapment. The informer was not even present on the day of the sale. Defendant, Luna, exhibited a familiarity with narcotics traffic and

a ready access to a supply source. The defendant was merely afforded the opportunity to commit a crime he was already predisposed to commit. Luna's testimony tended to portray himself as an innocent middleman between the governmental agents and the peddlers of narcotics. The defendant testified that prior to his arrest he did not know that Hemphill was a Narcotic Inspector or that Galloway was an employee of the State Narcotic Control. After his arrest defendant indicated that he desired to work as an informer and was presented with the opportunity. The Narcotic enforcement authorities decided that he did not make a serious effort to help in their enforcement efforts.

The trial attorney for the defendant waived the opportunity afforded him of making an opening statement informing the court and jury what he expected the evidence to develop. The trial judge was of the opinion that no evidence was presented of the defense of entrapment. The court and jury could not know that the defendant was presenting the defense of entrapment unless he did so in the course of the trial. No entrapment issue was presented to the jury. This is consistent with the defendant's testimony that he did not know until after his arrest that either Galloway or Hemphill was connected with government narcotics enforcement. The discussions about cooperation in helping to discover, arrest and prosecute the "higher-ups" in the narcotics traffic arose after the arrest and would relate to consideration which might be given to the defendant for his subsequent help in law enforcement. These discussions with the narcotic officers and the confession occurred after the arrest and do not affect the guilt or innocence of the defendant. We conclude that the trial judge did not err in excluding the answers to the questions propounded to the defendant as to his conversations with Galloway.

■ Finally the defendant insists that the trial judge committed reversible error by failing to instruct the jury in the defense of entrapment. We agree that if there exists any evidence supporting the theory of entrapment the defendant was entitled to an instruction thereon. The evidence shows that the defendant was familiar with the narcotics traffic, had ready access to a supply source and that he, in fact, introduced the inspector to that source and procured an ounce of heroin. His testimony shows that he did not know that either Galloway or Hemphill was a narcotic enforcement agent until his arrest following the sale of narcotics for which he was indicted. We find that since there was no evidence of entrapment, the trial judge was right in refusing to instruct the jury thereon.

For these reasons the judgment is affirmed.

Judgment affirmed.

BRYANT, P. J., concurs.

LYONS, J., dissenting.

I must disagree with the result reached by the majority.

The crucial issue to be decided in this case is whether the testimony of a defendant given in a hearing on a motion to suppress evidence, where the motion to suppress said evidence is sustained, can later be used against said defendant for purposes of impeachment. I feel the case of Safarik v. U. S., 62 F2d 892 (8th Cir 1933) is dispositive of the case at bar. In that case, the statements made by the defendant in a written motion to suppress were ruled inadmissible as admissions against interest. Surely, admissions made by a defendant during the course of a hearing on a motion to suppress are more harmful to a defendant's cause than admissions contained in a written motion. In the case at bar, defendant as in Safarik,

■■■■■■

supra, was forced to choose between the Fourth and Fifth Amendments. In order to avail himself of protection under the Fourth Amendment, defendant would have to waive his protection under the Fifth Amendment.

The majority seems to base the result reached on the theory that defendant was not obligated to testify during the hearing on the motion to suppress or take the stand during the trial. It is true defendant could have waived taking the stand in those instances. A defendant, however, should not be forced to choose between taking the stand during a hearing on a motion to suppress and waiving his right to testify during the course of the trial, in order to prevent his admissions from being used against him for the purpose of impeachment.

Heller v. U. S., 57 F2d 627, 629 (7th Cir 1932) is not applicable to the case at bar in that the principle enunciated in that case, that the testimony of a defendant during a hearing on a motion to suppress, is admissible for purposes of impeachment, was clearly obiter dictum.

It is my belief that the court committed reversible error by allowing the People to introduce evidence in violation of defendant's constitutional rights. I feel, however, that this point raises a substantial constitutional question and should not be decided by this tribunal. It is my position, therefore, that this case be transferred to the Supreme Court for a determination of the constitutional issue involved.