WILLIAM F. HUTSON *et al.*, Plaintiffs-Appellees, *v.* THE COUNTY OF COOK *et al.*, Defendants-Appellants.

(No. 57789;

First District (4th Division)—January 16, 1974.

Bernard Carey, State's Attorney, of Chicago (Michael H. Saken, Assistant State's Attorney, of counsel), for appellant County of Cook.

John M. Daley and Jack M. Siegel, both of Chicago, for appellees.

Zachary D. Ford, of Glenview (Frederick O. Floberg and Edward F. Ryan, of counsel), for intervenor-appellant Glenview Village.

Neistein, Richman, Hauslinger & Young, Ltd., of Chicago, for intervenors-appellants St. Peter United Church of Christ, and Max A. Hart and Florence S. Hart.

Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago, for intervenor-appellant Village of Northbrook.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The County of Cook, intervenor-defendants, Villages of Northbrook and Glenview, St. Peter United Church of Christ and Max A. and Florence S. Hart, have appealed from a declaratory judgment of the circuit court of Cook County holding that the Cook County zoning ordinance, insofar as it applies to plaintiffs' property, is unconstitutional and invalid.

On appeal, the appellants argue that plaintiffs failed to overcome the presumption of validity of the zoning ordinance, that the findings were against the manifest weight of the evidence and that the trial court erred in restricting intervenors' right to cross-examination.

Plaintiffs filed a complaint for a declaratory judgment that the zoning ordinance of the County of Cook is unconstitutional as it pertains to their property. Plaintiffs had unsuccessfully requested the Board of Commissioners of Cook County to reclassify the subject property from the R-3 single-family residence district to the R-4 single-family residence district and the B-4 general service district as a planned development. They then filed this action against the County of Cook to declare the R-3 single-family zoning of the property invalid and unconstitutional; to declare that plaintiffs have a right to use approximately one half of their property as a single-family planned development, and the remaining portion of the property as a general service district planned development, providing for a national chain food store, local shops and a restaurant;

and to restrain the county and its officials from interfering with that use.

After a bench trial on the merits, judgment was entered for the plaintiffs and against the defendants. In the final judgment order entered on June 13, 1972, the trial court specifically found that the highest and best use of the subject property was for the residential single-family planned development and the general service planned development of the type and character proposed to be erected by the plaintiffs. It further found that the zoning ordinance of the county, as applied to the subject property, insofar as it prevented the use of the subject property as proposed, is unreasonable, arbitrary, confiscatory, unconstitutional and void, and bears no reasonable relationship to the public health, safety, morals and welfare. The court found that the proposed use of a residential single-family planned development, consisting of 29 single-family lots, which range in area from 12,000 to 15,000 square feet, and a general service planned development providing for a national chain food store, offices, local retail shops and a restaurant, as indicated on the plans submitted to the court, was a reasonable use of subject property. The court found that with respect to the one half of the subject property with 950 feet on Willow Road and having a depth of 600 feet on Pfingsten Road, the application of the provisions of the Cook County zoning ordinance contained in the R-3, R-4, R-5, R-6, and B1, B-2 and B-3 districts would be unreasonable, arbitrary, confiscatory, unconstitutional and void. With respect to that portion of the subject property to be utilized for the residential single-family planned development, the application of the R-3 district of the Cook County zoning ordinance would be unreasonable, arbitrary, confiscatory and void. The court declared that the plaintiffs, or any persons claiming by, through and under them, were entitled to use the subject property for a residential single-family planned development and a general service planned development in substantial compliance with the plans submitted in evidence, and enjoined the county from interfering with such use of the subject property.

The Cook County zoning ordinance is involved. The detailed provisions of that ordinance are not at issue in this case. Under that ordinance, single-family dwellings are the principal permitted use in the R-3 and R-4 single-family residence districts. In the B-4 general service district, various commercial developments are permitted.

The plaintiffs herein are the owners of a certain tract of land located on the southeast corner of Willow Road and Pfingsten Road in the unincorporated area of Northfield Township in Cook County. The property consists of approximately 27.6 acres and is rectangular in shape. It is

vacant except for a single-family residential structure owned and occupied by the plaintiffs, William and Anna Hutson, on the southeasterly portion of the property. Harold Anderson, one of the witnesses for the plaintiffs, is a builder and developer and one of the owners of the subject property. His property was held in trust with Bernice Stege as Trustee and consisted of 13½ acres. It was consolidated with the property owned by Dr. and Mrs. Hutson for the purposes of development. He proposed a shopping center for the frontage along Willow Road and the southern portion of the property would be developed for single-family homes in the $50,000 to $60,000 price category with a minimum lot size of 12,000 square feet. He purchased the property seven or eight years ago for $300,000. The area was logical for commercial development because of the high speed of traffic on the road. He also indicated the long distance you have to go for shopping.

Peter Salinas, the developer's architect, also testified for the plaintiffs. He identified the subject property as a parcel of 27½ acres, with a frontage of 948 feet on Willow Road and 1,270 feet on Pfingsten. He had, in conjunction with Lawrence and Associates, prepared the plan of development consisting of a complex of retail stores and offices and 29 single-family lots. The retail business on the north section consists of a 44,000 square foot food and drug facility, retail stores, a three-story 21,000 square foot office building and a 22,000 square foot restaurant.

Paul Spies, a consulting engineer, testified for the plaintiffs. He was of the opinion that available utilities are adequate for the proposed development, and the developer had an agreement with the owners of the sanitary sewer system in the area permitting hookup.

William S. Lawrence, the city planning and zoning consultant who helped design the plan, testified as an expert witness for the plaintiffs. He testified that there is a single-family home directly adjacent eastward of the subject property and about 800 or 900 feet of vacant property before a single-family subdivision in the Village of Northbrook. To the east of that the area is vacant property to Shermer Road, where there is a gasoline service station and then a railroad on the south side of Willow Road. On the north side of Willow Road, west of the railroad and just east of Shermer Road is a sanitary landfill. Just west of the sanitary landfill is property zoned M-1. Proceeding from there in a westerly direction is an automobile service station and a car wash zoned in the county for B-4 as a result of a declaratory judgment suit. West of that is an additional gasoline service station on the west side of Shermer and surrounding that and to the north of it is a nursery and greenhouse facility. He also considered significant in the area, the office, research and manufacturing that is taking place west of the toll road both north and

south of Willow Road. He indicated the Culligan plant, the Illinois Bell Telephone structure, the A. C. Nielsen office building, and the Allstate national offices. The toll road was one mile west of the subject property.

Lawrence's opinion of the highest and best use of the subject property from a planning and zoning standpoint was for a planned development for residential on the southern part and on the north one half for a community shopping facility. In arriving at that opinion he took into account the change in the characteristics of Willow Road from a two-lane low-volume traffic facility to a four-lane well-developed major thoroughfare serving the entire community. He considered the fact that the nonresidential uses in and about the tollway play a significant part in generation of interest in the area of residential development, the fact that the intersection of Willow and Pfingsten is the intersection of two major streets and can provide a more intensive use because of the high efficiency of access that the intersection provided. He considered the fact that within this area, there is a need for shopping facilities, and within a 2½-mile radius, there are 5,670 dwellings constituting some 22,500 population as of early 1972. Projecting this to 1980, the figures would project to some 36,000 people and some 9,800 plus dwelling units. He testified that 80% of the families within this 2½-mile radius have a household income in excess of $10,000 per year. The existence of a retail establishment would serve as a screen and an insulation to the traffic and noise of Willow Road to the single-family area to the south.

Neal Kenig, a professional traffic engineer, testified for the plaintiffs. He had prepared an analysis of the traffic impact on the proposed development and the surrounding property. It was his opinion that the present thoroughfare would be adequate to accommodate the traffic to be generated by the proposed development. He assumed a primary trading area for the development of approximately two miles around the site.

Plaintiffs' real estate expert was F. Gregory Opelka, who held the MAI designation from the American Institute of Real Estate Appraisers and SREA from the Society of Real Estate Appraisers. He lived in Glenview and had served five years on the zoning board of Glenview. His qualifications were stipulated by the defendants. His opinion was that the highest and best use of the subject property from a real estate standpoint was the planned development proposed for the subject property. He had taken into consideration the general growth of housing developments in the area, the road systems that bring people in and about the area, and the fact that Willow Road is a four-lane highway with fast-moving traffic and the tollway exists to the west of the subject property. He referred to the remodeling of the interchange at Willow Road and the increase of the traffic in the area. He considered the fact that there is a large move-

ment of non-residential vehicles into the area north of Willow Road and that the road system in the area of Willow Road moves into the industrial area. He considered that this intersection had lost its residential character. The starting and stopping of vehicles, the environmental problems of noise and exhaust, and the light generated by vehicles starting and stopping all made it hard to cope with the development of a residential community at Pfingsten Road and Willow Road. He could not remember a new home being built on Willow Road in the last five years except in the La Salceda Subdivision which lies to the east and the houses in that subdivision back up to Willow Road with a fence built along it to further insulate and isolate the development. He did not believe the highest and best use of the property would be a residential development because of the problems he described. The high priced homes were built prior to the widening of Willow Road. The home on the southwest corner of Pfingsten and Willow Road is 45 years old, and was built before the general development and character of the area was formulated.

Opelka was familiar with the plan offered by the plaintiffs. It fell within his definition of the highest and best use of the subject property. He was of the opinion that the development would not have any depreciating effect on any property whatsoever, including property to the east and west. He had appraised the property for R-4 purposes, as worth approximately $400,000. If it were one half R-4 and one half B-4 as the site plan exists, the value of the property would be approximately $1,-200,000. In his judgment the highest and best use of the subject property was for one half B-4 and one half R-4.

Max Hart, the intervening property owner, lives west of the subject property. He purchased his property in 1955 for $80,000 for 8½ acres. Willow Road was a two-lane street when he bought his house. The tollway was not there. The property immediately south of him was zoned R-4 some time ago by Cook County. R-4 is 10,000 square foot lots. He does not object to the single-family proposed for the south half of the planned development. Since he built his home, traffic on Willow Road increased due to the widening of Willow Road and with exit and entrance to the toll road. Truck traffic has also increased. A business was now operating on the northeast corner of Pfingsten and Willow Road, being a commercial nursery.

Arthur Funke lives on the north side of Willow Road. He purchased his property in 1944 and constructed his home the next year. His is a five-acre tract. He is next to St. Peter United Church of Christ, which is on a 7½-acre site. His home is 135 feet back from the north edge of Willow Road, which is a four-lane state highway with a 100 foot right-

of-way, so his house is 235 feet from the property line of the subject property. He built his home in 1945 at a cost of $50,000 for the house and $3,000 for the five acres. He testified that when he bought his property Willow Road was a nice two-lane gravel road, but is now an "Indianapolis speedway; four lanes of concrete". The speed limit is 50 m.p.h. Today he would not buy it.

William McKinley, a resident on Lawson Road in Glenview, testified for defendant. Jerry Wyatt, another homeowner in Northbrook, also testified for defendant.

Harry A. Young, Jr., a member of the Church Council and attorney for St. Peter United Church of Christ and a law partner of the attorney for the intervenors, testified for the defendants. He testified that the church has been located at its present site for six years. It is comprized of seven acres. He thought the business portion of the planned development would interfere with the use and enjoyment of the church by way of increased traffic if the stores were open on *Sunday*. For regular services, the church is usually open on Sunday mornings. The rest of the days the church is unoccupied, unless there is a special event.

Vernon Mock, a member of High School Board 225, testified for the defense. He objected to the proposed development because a shuttle bus service of 14 buses pass the subject property daily in both directions. On cross-examination he testified that the single-family and commercial development of the property will have a favorable economic effect on the school base.

Thomas J. Buckley, a city planning and zoning consultant, testified that in his opinion the best use was for an R-4 district with a minimum lot area of 10,000 square feet. He would back the lots onto Pfingsten and Willow Roads. On cross-examination he said his only quarrel was with the use of the northern portion of subject property for a commercial development. He agreed that R-3 was not the highest and best use.

John C. Hunter, a part-time real estate appraiser and property manager testified for defendants, and in his opinion the property zoned R-3 is worth $300,000 or $11,000 an acre. Under R-4 classification the value would be $450,000 or $16,250 an acre. If the property were developed one-half B-4 and one-half R-4, the value would be $800,000—$600,000 for the commercial use of the north one half and $200,000 for the residential use of the single-family dwellings in the south one half. With respect to the property on the southwest corner of the intersection, if the proposed development were improved and proved to be a good business area, it could increase the value of the land.

Robert VanDeusen, the city manager of the Village of Glenview, testified as to the opposition of the village. He said that the needs of the

area for any kind of convenient shopping are provided in the Glenview comprehensive plan calling for commercial uses at the intersection of Shermer and Willow Roads. Further objection was the traffic problem. He conceded that from time to time uses were allowed contrary to the master plan.

Thompson A. Dyke is a city planning consultant and is retained on a regular basis for the Village of Northbrook, one of the intervenors. His opinion of the highest and best use of the subject property was for R-4 purposes. He thought there was no need for commercial development because of developments in the Villages of Glenview, Northbrook and Northfield. He agreed the south part followed the trend of development around the subject property. On cross-examination, he had testified in favor of a 40-acre shopping center within the Village of Northbrook at Landwehr and Dundee Roads. With respect to the Sportsman's Golf Course immediately to the west of White Plains Road, he had recommended a commercial shopping center about 1,000 feet from the White Plains Shopping Center. He had no quarrel with the southern portion of the planned development. He testified there are only about five homes on Willow Road and none of them have direct access to the road. At the northwest corner of Willow and Shermer Roads, there is a gas station, and another gas station and car wash at the northwest corner. There is a gas station also at the southeast corner. The distance from Shermer Road to the tollway on Willow is two miles. Pfingsten Road would be about halfway between them. The subject property would be a mile east of the tollway and a mile west of Shermer.

Rolf Campbell, a city planning and zoning consultant, was called as a rebuttal witness by the plaintiffs. The proposed plan of development was the highest and best use for this parcel of land. The shopping center should be oriented to the two major thoroughfares, Pfingsten and Willow Roads. It has good access and will service an area in a radius of approximately 1½ miles of the subject property. To the west of the subject site at the intersection of the Tri-State Tollway, there is a quadrant of four corners that are oriented to a commercial, office-type development. Additional office buildings are pending. All of these will need facilities for shopping and food service. Campbell also took into consideration the potential increase in population being brought about by multiple-family developments that the Village of Northbrook is permitting to the east of the subject property on Willow Road. The property in the Willows development would not be adversely affected. There would be at least four rows of lots of single-family homes of the same character and kind of development which would be adequately buffered. They will have a convenience center at a reasonable distance from those properties. People

will buy homes on the subject property with knowledge that the shopping center will be built.

In a recent case, *Stalzer v. Village of Matteson*, 14 Ill.App.3d 891, 303 N.E.2d 489, the plaintiffs sought to invalidate a zoning ordinance of defendant as applicable to real estate owned by them. The trial court granted the relief prayed, found the ordinance invalid in its application to plaintiffs' property and directed issuance of permits to plaintiffs for the use of the property which they sought. Upon appeal this court, in an opinion delivered by Mr. Justice Goldberg, affirmed the judgment of the trial court. The court stated:

> "Analysis of this evidence should proceed under basic legal guidelines which are clear and long established by many decisions of the reviewing courts of Illinois. The decision of our Supreme Court in the constantly cited case of *La Salle National Bank v. County of Cook*, 12 Ill.2d 40, 145 N.E.2d 65, sets forth the required principles. They may be summarized as follows:
>
> 1. It is primarily the province of the municipality to decide zoning matters. Courts will not interfere with municipal decisions in this field unless they are arbitrary or capricious or are not related to public health, safety and welfare.
>
> 2. Therefore, zoning ordinances are presumptively valid and the burden rests upon the plaintiff in any case to overcome this presumption by clear and convincing evidence.
>
> 3. If evidence is produced to the effect that the restrictions bear no substantial relation to public health, safety, morals, comfort and general welfare, the ordinance will be declared void as regards its application to the property of the plaintiff.
>
> 4. Zoning cases are sui generis so that the validity of each such ordinance must be determined on its own facts and circumstances.
>
> In addition, the Supreme Court set forth six pertinent factors which must be considered to determine the validity of any zoning ordinance. These elements have been stated repeatedly in many subsequent cases. See *La Salle National Bank v. County of Cook*, 4 Ill.App.3d 266, 271, 280 N.E.2d 739." 14 Ill.App.3d 891, 900-901, 303 N.E.2d 489, 496.

In this case, as in the case at bar, the trial court found the highest and best use of the subject property to be R-4 standards of defendant's zoning ordinance. The experts also agreed that the present zoning, R-1 in that case and R-3 in this case, was not the highest and best use of the property. The court further stated at page 13 of its opinion:

> "We cannot modify or change the zoning status or classification of property. We can only determine the validity of the ordinance

as regards the subject property and also the reasonableness of the proposed use."

In the case of *Beaver v. Village of Bolingbrook* (1973), 12 Ill.App.3d 923, 925-26, 298 N.E.2d 761, the court affirmed the judgment of the circuit court of Will County, Illinois, which held the zoning ordinance of the Village of Bolingbrook to be invalid as to certain property of the plaintiff and enjoined the village from interfering with the use of the property for a neighborhood shopping center and an automobile service station. The court stated at pages 925-26 as follows:

"It is clear that substantial detriment is caused the plaintiff by the present zoning of her property. The price she would receive from Yale Development Company, if commercial uses should become allowable, is $230,000 for 10 acres, or $172,500 for the 7½-acre tract involved in this litigation. Two of her witnesses would place a valuation of $400,000 on the 7½-acre tract as commercial property in the absence of a contract with Yale Development Company providing for a lower figure. The value of the 7½-acre tract as presently zoned for residential use is $37,500 to $50,000 according to the plaintiff's expert witnesses and $52,500 to $60,000 according to the witness testifying for the Village. It is thus established that the loss which present zoning restrictions would place on the plaintiff is between $112,500 and $135,000 for the 7½ acres.

We have considered, in our review of the record, the various factors which have been said to merit consideration. (See *La Salle National Bank v. County of Cook*, 12 Ill.2d 40, 46-47; *Lakeland Bluff, Inc., v. County of Will*, 114 Ill.App.2d 267, 275-76.) We have thereby sought to assess whether the challenged ordinance imposes a much more serious burden on the plaintiff than the public benefit seems to warrant, in which case the ordinance must be held unreasonable and void as applied to the plaintiff's property. (*Tillitson v. City of Urbana*, 29 Ill.2d 22, 27.) It is our conclusion that, as the Illinois Supreme Court has stated in another case involving a proposed automobile service station, 'the hardship to the plaintiff is plain and uncontradicted, while the gain or hardship to nearby property owners is uncertain and minimal and presents little justification for the extreme confiscation of value worked upon the plaintiff's land by the residential classification.' (*Chicago Title & Trust Co. v. Village of Wilmette*, 27 Ill.2d 116, 126.) We believe that the findings of the circuit court on the character of Route 53 and other factual matters in dispute are not contrary to the manifest weight of the evidence and so should not be disturbed. (*Locker v. City of McHenry*, 89 Ill.App.2d 457, 462.) We

therefore concur with the decision of the circuit court that the residential classification of the plaintiff's property is unreasonable and void and that the proposed uses of her property are reasonable and are to be allowed. Pending motions asking that we consider certain recent changes in the vicinity of the plaintiff's property are denied, and the judgment of the Circuit Court of Will County is affirmed."

■■ In the instant case, we find that the plaintiffs have overcome the presumption of the validity of the zoning ordinance as applied to their property. The overwhelming amount of evidence offered by the plaintiffs clearly demonstrates that the R-3 single-family zoning of the ordinance is not the highest and best use of the subject property. The change of the intersection from a two-lane to a four-lane highway, with greatly increased traffic and the tollway, and surrounding commercial and residential areas, demonstrate the need for a convenient shopping area to take care of the expanding population.

The evidence by the intervenors shows a minimal interference, if any, in the use and enjoyment of their property. The detriment to the plaintiffs greatly outweighs any benefit to the public.

There is little opposition to the R-4 classification of the south one half as single-family dwellings of $50,000 to $60,000 price category, with a minimum lot size of 12,000 square feet. This planned residential development is compatible with other developments in the area.

The objections to the B-4 commercial planned development on the north one half were amply rebutted by evidence showing this to be the highest and best use of the property at the busy intersection, which made it unfeasible for residential use. A nursery and gas stations and other shopping centers were in the vicinity.

We hold that the findings of the trial court were not against the manifest weight of the evidence. The proposed use is reasonable and valid. There was sufficient evidence in the record to support the findings of the trial court. The property was purchased for $300,000, as zoned R-3. It is worth $400,000 if zoned R-4. Its estimated worth is $1,200,000 if zoned R-4 residential planned development on the south one half and B-4 commercial planned development on the north one half, and this is its highest and best use.

The intervenor-defendants claim that the trial court's restriction on their cross-examination was reversible error. After questioning of one witness by the attorneys for each defendant, the court limited the questioning to Assistant State's Attorney Sakin, and directed that all questions to be asked be submitted to and asked by him. The right of a trial court to control the course of litigation to insure a fair trial for all parties and

to avoid undue delay is unquestionable. There were four (4) lawyers representing the defendants at all times. The court emphasized that counsel for the intervenors could put on their own witnesses and conduct their own cases and the record indicates that they did so. The court also indicated that at the close of each witness' testimony, the intervenors' attorneys would be given one-half hour recess, at which time they could submit questions to the Assistant State's Attorney for additional cross-examination. The voluminous record in this case is ample evidence of the breadth and extent of the cross-examination.

■■ The procedure of the court was a reasonable exercise of its discretion in the interest of serving the ends of justice. The defendants failed to point out where they were precluded from having a question asked on cross-examination. Moreover, it is quite clear that restrictions on cross-examination will not be grounds for reversal when all the evidence is before the trial court and the appellate court. In the case of *Chamness v. Dawson* (1963), 44 Ill.App.2d 176, 194 N.E.2d 538, the court emphasized that the scope and extent of cross-examination was within the sound discretion of the trial court. At page 177, the court cited 69 A.L.R.2d 593 for the proposition:

> " 'It has repeatedly been declared that the extent of cross-examination with respect to an appropriate subject of inquiry rests with the sound discretion of the trial court, and it is only in case of clear abuse of discretion, resulting in manifest prejudice to the complaining party, that a reviewing court will interfere.' "

■■ To the same effect was the holding in *Green v. Keenan* (1956), 10 Ill.App.2d 53, 134 N.E.2d 115, where the court at page 61 said:

> "The scope of cross-examination is largely within the discretion of the trial court. It should be kept within fair and reasonable limits, and the court has a discretion in the conduct on the trial for that purpose. People v. Strauch, 247 Ill. 220; Davison v. People, 90 Ill. 221; Cooper v. Randall, 59 Ill. 317; Birmingham Fire Ins. Co. v. Pulver, 126 Ill. 329."

The appellate courts in this State have frequently held that the limitations on cross-examination is not reversible error. See *Krupp v. National Fur Dressing & Dyeing Co.* (1928), 250 Ill.App. 282.

In *Thorpe v. Weber* (1914), 191 Ill.App. 2, 4, the court held that any error of the court in refusing to permit defendants to cross-examine some of plaintiff's witnesses was harmless when the witnesses were otherwise thoroughly examined by defendants with reference to all matters inquired of them by plaintiff.

The cases cited by the defendants have no application to the case at bar. The case of *Parker v. Gladden* (1966), 385 U.S. 363 17 L.Ed.2d 420,

87 S.Ct. 468, involved a murder trial in which there was alleged misconduct by the court's bailiff. The court held that in a criminal trial, under the sixth amendment, the defendant was entitled to cross-examine, to confront witnesses, and to have counsel. The case of *People v. Luna* (1966), 69 Ill.App.2d 291, 216 N.E.2d 473, was also a criminal proceeding in which the appellate court pointed out the right to cross-examination in a criminal case as part of our judicial system and that cross-examination would be unduly restricted should the court hold a witness' credibility could not be compared with prior inconsistent testimony. In *Seil v. Board of Supervisors of Will County* (1968), 93 Ill.App.2d 1, 234 N.E.2d 826, the court upheld the right of the intervenors in the declaratory judgment action to pursue the action although the original action by the plaintiff was dismissed.

There is no showing in this case of prejudice to any of the defendants' right in a trial which lasted many days and involved a transcript of 650 pages. We find that the trial court did not err in restricting the cross-examination to manageable proportions.

The plaintiffs have overcome the presumption of validity attaching to the zoning ordinance of the County of Cook. The restrictions against the proposed use bear no reasonable relationship to the public health, safety, morals and welfare. The value of the subject property is drastically reduced without substantial benefit to the public. There was no prejudicial or harmful error in the manner in which the trial was conducted or the evidence was received.

In our opinion, the findings made and the result reached by the trial court are fully supported by clear and convincing evidence.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

ADESKO, P. J., and DIERINGER, J., concur.