(No. 36687.—)

La Salle National Bank, as Trustee, Appellee, *vs.* The City of Evanston, Appellant.

*Opinion filed January 23, 1962.*

Rex A. Bullinger, Corporation Counsel, of Evanston, and Ross, McGowan & O'Keefe, of Chicago, (Richard F. Babcock, Russell A. Behrens, and R. Marlin Smith, of counsel,) for appellant.

Jerome Berkson, of Chicago, for appellee.

Mr. Justice Klingbiel delivered the opinion of the court:

The city of Evanston appeals from a decree of the circuit court of Cook County declaring void the city's zoning ordinance insofar as it restricts the use of plaintiff's land to single-family residence purposes. The trial judge certified that the validity of a municipal ordinance is involved and that the public interest requires the appeal to be taken directly to this court.

The property involved here is vacant. It was part of a larger tract, purchased in 1956, which had a frontage of 106 feet on the east side of Dodge Avenue and extended eastward a distance of 1278 feet. Along the north boundary runs the right of way of the Chicago North Shore and Milwaukee railroad, the tracks of which are built upon an elevated embankment. On the south (except for the west

125 feet) is an unpaved alley beyond which is a line of houses facing Brummel Street, an east-west street farther to the south. The alley runs from the east to a point 125 feet east of Dodge Avenue, where it makes a right-angle turn and continues south into Brummel Street. The east-west portion of the alley was 8 feet in width, the north-south portion being 16 feet. After its purchase the original tract was subdivided, and the plaintiff dedicated the south 12 feet bordering the alley, so that the east-west portion of the alley became 20 feet in width.

The east half of the tract was divided into six residential lots upon which homes were built. They have all been sold. The remainder of the tract consists of lot 1, having a 106-foot frontage on Dodge Avenue and a depth to the east of 125 feet, and lot 2 which has a 94-foot width and extends east from the rear of lot 1, 504 feet to the back yards of the two western-most residences on the east half of the original tract.

Lot 1, with other property along both sides of Dodge Avenue to a depth of 125 feet, is classified as a "General Residence District," in which duplex and multiple-family uses (including nursing homes on special use permit) are allowed. Lot 2, like the area surrounding it on the remaining three sides, is in a "Single-Family Residence District." Plaintiff desires to use lots 1 and 2 as one parcel for multiple-dwelling purposes, and maintains in these proceedings that prohibiting such use of lot 2 is arbitrary and unrelated to the public welfare.

There is little dispute about the character of the neighborhood. To the north, on the other side of the railroad embankment, are residences. Single-family homes also adjoin the subject tract on the east and across the alley on the south. Except for properties along Dodge Avenue, a heavily traveled thoroughfare, the general area is zoned and used for single-family dwellings. Both sides of Dodge Avenue, which is separated from lot 2 by the depth of lot 1, are de-

voted largely to commercial and multiple-dwelling purposes, although there are several single-family homes on the west side of the avenue. Directly across the avenue from lot 1 a variation was granted so as to permit the erection of multiple-family dwellings to a depth of 250 feet.

The only access to lot 2 (except by going across lot 1 from Dodge Avenue) is by way of the alley. On the west is the boundary of lot 1, zoned for a more intensive use, on the north is the railroad embankment, and on the east are the rear property lines of two residences. Moreover, to use the tract for single-family residences it would be necessary under the building code to provide a minimum of 6500 square feet per residence instead of the usual 5000 because of the absence of vehicular access to the street, and this would reduce the number of dwelling units to less than half of the number which could be built on the lot if used for multiple-dwelling purposes.

Examination of the present record, including the maps and other exhibits in evidence, shows adequate support for the finding that this lot, characterized by defendant's expert as an "odd-shaped remnant of real estate," is not suitable for single-family dwellings. It is a long and narrow strip measuring 94 feet north and south by 504 feet east and west. North is the railroad, beyond which are the back yards of residences. On the south is the alley beyond which are houses, also facing the other direction. And on the west is the vacant lot 1 fronting on a main thoroughfare. Ingress and egress is only through the alley, unless part of lot 1 is utilized as an easement for road purposes. A city planning expert testified for the plaintiff that the highest and best use from a zoning and planning viewpoint was an institutional use with access from Dodge Avenue. Other witnesses testified to a similar effect. In view of its shape, its inaccessability, and its general location we think lot 2 is essentially a part of one continuous parcel which includes lot 1, and that under the circumstances shown here it is

arbitrary to classify it separately therefrom, for single-family residences only.

It was stipulated that if six of the residents in the neighborhood were called as witnesses they would testify to their reliance on the single-family zoning of the neighborhood when they built their homes. It is also true, as defendant emphasizes, that "this elongated piece of property" lies crosswise of a zoning pattern that runs north and south. It is not pointed out, however, how much if any the neighboring property values would be affected by the proposed use. Nor is the fact that this strip extends into a single-family area determinative under the peculiar circumstances of this case. It is bordered by a railroad on the north and an alley on the south, and the nearest residences all face away from the property.

In ascertaining whether a zoning ordinance is valid in its application a court must determine each case on its own facts and circumstances. (*Bauske* v. *City of Des Plaines,* 13 Ill.2d 169; *Trust Co. of Chicago* v. *City of Chicago,* 408 Ill. 91.) The factors to be taken into consideration include the zoning and uses of nearby property, the character of the neighborhood, and the suitability of the subject property for the zoned purposes. Where the surrounding area has been put to residential use, and the subject property is suitable for such use, an ordinance restricting its use to residential purposes is not unreasonable merely because the land would have a higher value if zoned for more intensive uses. (*River Forest State Bank and Trust Co.* v. *Village of Maywood,* 23 Ill.2d 560; *Kennedy* v. *City of Chicago,* 11 Ill.2d 302; *Miller Bros. Lumber Co.* v. *City of Chicago,* 414 Ill. 162.) If it would not be feasible to utilize a particular tract for single-family residences, however, because of its peculiar location or other individual characteristics making it unsuitable for such use, an ordinance so classifying it is arbitrary, in the absence of some substantial gain to the public accruing from its enforcement. *Weglarz* v.

*Village of Villa Park,* 21 Ill.2d 202; *Liebling* v. *Village of Deerfield,* 21 Ill.2d 196.

We think that such is the case here, and that as we said with reference to the situation in the *Liebling* case, "there is no substantial gain to the public in keeping this large tract an undeveloped waste land." For reasons primarily of accessibility it is evident that lot 2 is an integral part of lot 1, which fronts on Dodge Avenue, rather than a part of the residential areas to the north and south, and that its highest and best use is governed accordingly. We recognize that these considerations are not conclusive, and that property may nevertheless be classified in a more restricted zone where it is in the public interest to do so. But under the peculiar facts and circumstances of this case, including the shape of the subject property and its location between the alley and the railroad, we think the gain to the public from the present restriction is small as compared to the hardship imposed on the owner, and that the circuit court was warranted in holding the ordinance invalid.

Defendant argues that plaintiff's beneficiary bought the land knowing of the difficulties involved in developing it, and that by subdividing so as to have two houses at the east boundary of lot 2 he compounded the access problems. It is true that a purchaser who buys property upon which a restriction has previously been imposed is not in as favorable a position, in challenging its validity, as is one who buys prior to a rezoning and in reliance upon an existing ordinance. (*People ex rel. Alco Deree Co.* v. *City of Chicago,* 2 Ill.2d 350, 359.) This does not mean, however, that a purchaser may not attack the validity of a pre-existing restriction. A zoning ordinance cannot be sustained if in violation of the constitution, no matter how long or by whom it has been recognized as legal, and the fact that the purchaser or his grantor may have acquiesced in the classification will not estop him from testing its validity. (*Trust Co. of Chicago* v. *City of Chicago,* 408 Ill. 91.) Nor is re-

lief precluded in the case at bar by the fact that houses were built on the eastern part of the original tract. From the exhibits and other evidence it appears that the access problems are inherent in the shape and location of the parcel itself.

Defendant finally urges that the court erred in not limiting the relief granted to that prayed for in the complaint. The complaint prays simply that the ordinance "is invalid and unreasonable" and that an injunction issue restraining defendant "from in any matter enforcing or attempting to enforce the present Zoning Ordinance against the plaintiff's property." The decree is in conformity with the prayer for relief and is supported by the evidence. Moreover, no ruling is pointed to whereby the trial court refused, upon request, to limit the scope of its decree as defendant now proposes.

No error has been shown, and the decree is therefore affirmed.

*Decree affirmed.*