(No. 36957.—

La Salle National Bank, Trustee *et al.*, Appellees, *vs.* The Village of Skokie, Appellant.

*Opinion filed Sept. 28, 1962.—Rehearing denied Nov. 29, 1962.*

Marvin J. Glink, Corporation Counsel, of Skokie, for appellant.

Sidney Z. Karasik, of Chicago, for appellee.

Mr. Justice House delivered the opinion of the court:

This is a consolidation of two declaratory judgment actions in the circuit court of Cook County, one by the La Salle National Bank, the holder of legal title to seven lots as trustee for Old Orchard Town Homes, Inc., and the other by Old Orchard, the owner of the remaining seven lots in the west one-half of a block. By stipulation the fourteen lots comprise the "subject site." The village appeals from a decree holding the village zoning ordinance

void as applied to plaintiffs' property and declaring that the owners may make any improvement permitted under an R-4 (multiple-dwelling) classification. The validity of a municipal ordinance is involved, and the trial court has certified that the public interest requires a direct appeal to this court.

The subject tract is 156 feet deep with a frontage of 412 feet on the east side of Kenton Avenue, an extension of and also known as Niles Center Road. It is bounded on the south by Lyons Street, on the east by an alley through the center of the block, and on the north by Terminal Park. The southerly portion was occupied by a greenhouse nursery from about 1927 until 1960, but the whole tract is now vacant. It is zoned R-1 (single-family). The entire area to the east is zoned for and has been developed as a single-family district. The zoning and development along Niles Center Road, including its extension as Kenton Avenue, is in sharp contrast. A B-1 district lies one block south of plaintiffs' property, and a B-2 district commences approximately 1½ blocks north. The west one-half of the block to the south is sparsely developed with single-family residences. From thence south to Davis Street, the second street south of Lyons, about ⅓ is devoted to church use, ⅓ to multiple dwellings and ⅓ vacant. North of Terminal Park there is an old residence, another single-family dwelling, and nine townhouses extending to the intersection of Niles Center and Gross Point roads. Across the street to the west of the subject property is newly constructed Old Orchard Junior High School and west of that is Sharp Corner Elementary School. The land south of the school to Church Street (lying between Lyons and Davis) is practically vacant, and from thence south to Davis is developed with apartment buildings. Just west of Niles Center Road on Church Street a shopping plaza on the north side of the street faces multiple-family structures on the south.

If this property's character is fixed by the residential

area to the east, the zoning is reasonable. On the other hand, if it partakes of the existing uses, zoning and trend of development along Niles Center Road, there is little justification for the R-1 classification.

The B-1 district to the south and the B-2 to the north, each only a few hundred feet from the property in question, are devoted to commercial, multiple-dwelling and church use. Aside from the schools and park, both permitted uses, the R-1 district lying between the two is largely undeveloped. The village adopted an ordinance shortly after the hearing of this cause authorizing the construction and operation of a nursing home just north of the high school, thus recognizing the multiple-use character of land abutting on the thoroughfare in the vicinity of plaintiffs' tract. ·

We are of the opinion that this property takes its character from the trend of development along Niles Center Road. It is significant that the east half of the blocks facing Kolmar Avenue (the first street east) and the entire area further east are fully devoted to single-family detached dwellings, while the lots facing Niles Center Road are mostly undeveloped, although all enjoy the same R-1 classification. The alley between would constitute a sufficient dividing line if this R-4 use be permitted, since the west half of the blocks are on the periphery of the residential development.

The undisputed opinion testimony placed the value of the property at $40,000 as presently zoned and in excess of $150,000 if the more intensive use be permitted. There was no proof as to the amount of decline in values, if any, of the dwellings in the residential area to the east if the proposed apartment building be built. Dr. Irving Citron, an optometrist living on Kolmar, testified that the apartment would adversely affect his property because it would create greater density, would increase traffic and traffic hazards and would create a greater litter problem. His testimony was endorsed by four neighbors living on Kolmar and one

on Lyons. No objections were lodged by any of the residents west of the alley or the street.

There was a difference of opinion among the experts as to the highest and best use of the property, although they did not seem to disagree that the village had zoned sufficient areas for commercial use. Those testifying for the village believed that the proximity of neighborhood Terminal Park and the schools made single-family use the best. They felt that use for multiple-dwelling purposes would bring a greater density of population and a larger movement of people in traffic. Those testifying for the plaintiffs indicated that it was advantageous to have a greater density next to an open park area because of the light and air and stated that additional foot traffic generated by the school was not in the best interest of single-family use.

There was evidence as to the amount of traffic adduced by both parties; which varied because traffic counts were made at different times. The testimony does establish that Niles Center Road has a substantially greater volume of traffic than the streets to the east since it directly connects the nearby commercial districts and some of the traffic flows into it from the residential streets. Traffic is intensified by the abutting school and park and will be further increased by the nursing home. While we have recognized traffic as a factor, it is not in itself entitled to too much weight since it is a problem in all but the most sheltered neighborhoods and is constantly getting worse.

A somewhat similar observation may safely be made with respect to schools. Because of urban concentration, coupled with the population explosion, practically every school district is beset with the problem of keeping facilities abreast of enrollment, regardless of whether it is developed as a single-family or multiple-dwelling community.

The careful study indicated by the testimony of Wesley Gibbs, superintendent of District No. 68, established that the Sharp Corner school has an enrollment of 780 children

while its designated capacity is 550. The Junior High School, completed in 1960, was built to accommodate 900 and has an enrollment of 630. Studies indicate that it will reach its capacity within 5 years. The present total enrollment in the 5 schools in the district is approximately 3300 and will be increased to 4000 when fully developed. He was unable to give the estimated increase in pupils if the subject tract is developed multiple-family because the number of children per family unit varies with the size of the apartments. If it is fully developed with 75 one-bedroom apartments the formula produces 8 children, the same as if devoted to single-family use, but if developed with 61 two-bedroom units the number of children would increase to 50. We believe it unnecessary to pass upon the issue of whether the additional impact upon school population is a factor to be considered, since the increase would be *de minimus* under the evidence in this case.

A thorough consideration of all the circumstances, including the character and trend of development along Niles Center Road, the fact that much of the abutting land remains undeveloped for single-family use under its R-1 classification, the high density of movement caused by the school and park, the municipal approval of the proposed nursing home, and the depth of the tract which lends itself to R-4 use and allows required off-street parking, compels the conclusion that the relative gain to the public is slight as compared to the hardship imposed upon the owner by maintaining the restrictive zoning classification. The traffic noise and litter complained of already exist in large measure, and an apartment building is more compatible with such conditions than single-family residences.

We find no error in the holding of the circuit court of Cook County that the ordinance, as applied to the subject property, has no reasonable relationship to the public health, safety or general welfare, and its decree is affirmed.

*Decree affirmed.*