(No. 37453.—<span style="background:black"></span>)

FRANK VAN LATEN *et al.,* Appellees, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed May 27, 1963.*

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN and RITA IVY EPSTEIN, Assistant Corporation Counsel, of counsel,) for appellant.

LAWLOR and WALSH, and ROSS, McGOWAN, HARDIES & O'KEEFE, both of Chicago, (RICHARD F. BABCOCK, DUDLEY R. SULLIVAN, and R. MARLIN SMITH, of counsel,) for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The city of Chicago appeals from a declaratory judgment finding its zoning ordinance void as applied to the several pieces of property of the plaintiffs.

The subject area encompasses slightly more than the southerly half of the westerly portion of lots in the block between 114th Street and 115th Street and all of the westerly portion of the block between 115th and 116th Place, except for an irregular tract just north of 116th Place. It has a frontage on the east side of Western Avenue of approximately 1000 feet. Practically all of the strip has a depth of 200 feet east, which is slightly less than the westerly half of the blocks. Thus, it is roughly a strip 1000 feet by 200 feet. Most of the strip is owned by plaintiffs.

Western Avenue is a heavily travelled 100-foot-wide arterial street extending through the city of Chicago. A large percentage of abutting frontage in its approximately 23-mile length bears a commercial classification and is largely developed to business uses. From 1923 to 1942 the subject area and the east half of the blocks across the street were both zoned commercial. In 1942 this property was zoned R-1 (single-family residential) and that classification was retained under the 1957 comprehensive zoning amendment, but the strip on the west side of the street remained zoned for business under a B-4 classification.

This action was instituted in 1956, and a supplemental complaint was filed after the adoption of the 1957 amendatory ordinance. The cause was heard, the master's report

was served on the parties on March 3, 1960, and was filed on May 4, 1960. Thereafter on May 16, 1960, the city adopted an amendment covering only the 200-foot strip between 114th Street and 116th Place, changing the classification from R-1 to R-3.

The city now seeks to invoke the *Bright* doctrine, (*Bright* v. *City of Evanston*, 10 Ill.2d 178), and asserts that plaintiffs' action is premature since they failed to seek a further amendment. As we stated in *County of Lake* v. *MacNeal*, 24 Ill.2d 253, 259: "The *Bright* rule did not stem from legislative or constitutional command, but is no more than an expression of judicial policy prompted by the circumstance that zoning is legislative and administrative in nature, not judicial, and which is aimed at providing the local authority an opportunity to correct error and to settle disputes locally before there is judicial intervention. [Citations]." And again, at page 260, "To compel a property owner to first seek local relief in the face of the demonstrated attitude of the local authority, would be a patently useless step which would increase costs, promote circuity of action and delay the administration of justice." (See also *Herman* v. *Village of Hillside*, 15 Ill.2d 396; *Westfield* v. *City of Chicago*, 26 Ill.2d 526.) Other jurisdictions which have an "exhaustion rule" have adopted a similar view. (*Napierkowski* v. *Township of Gloucester*, 29 N.J. 481, 150 A.2d 481; *City of Holly Hill* v. *State ex rel. Gem Enterprises* (Fla. App.) 132 So. 2d 29; *Corsino* v. *Graver*, 148 Conn. 299, 170 A. 2d 267.) Here, the city has twice amended its zoning ordinance since suit was filed. The 1960 amendment affecting practically the identical area involved in the litigation followed the filing of the master's report by only 12 days. Twice it had an opportunity to correct inequities, if such they were. The 1960 amendment changing the classification was in the face of an adverse recommendation by the master after the evidence had been taken, and its adoption caused a re-reference and further delay. If this pro-

cedure were condoned, it could go on *ad infinitum,* and would defeat one of the purposes of the *Bright* rule, namely, to prevent delay in the administration of justice. Under the circumstances presented, we are of the opinion that seeking a further amendment would have been futile and therefore the *Bright* rule does not apply.

The territory east of the 200-foot strip is zoned R-1 and that lying west of the east half of the blocks facing Western Avenue across the street is zoned R-2. The west frontage of Western Avenue has been extensively developed since 1942 to commercial uses such as restaurants with adjacent parking facilities and a gasoline service station directly across the street. By the way of contrast, there were three residences between 114th and 116th in 1942. Only one was added from then to 1957. Since 1957 two additional dwellings have been built to the north and one on the south extremity of the strip. The only residence within the subject area faces 115th Street. At the north end of the subject area is a chicken farm and the remainder is vacant. Eight large billboards now occupy the tract. The block to the north is vacant except for two residences, a part of one being used by a chiropractor for his office. The next block north is occupied by an institutional home. The first block south has three residences, three vacant lots, and the remainder is used for a church and school. The second block south has two residences, a narrow parking area, six vacant lots, a C.T.A. turn-around and a service station.

We have recognized that opposite sides of a street may bear different zoning classifications and that a street may be the dividing line between zoning districts. (*La Salle Nat. Bank* v. *City of Chicago,* 6 Ill.2d 22; *Bennett* v. *City of Chicago,* 24 Ill.2d 270.) However, it will be noted that in the foregoing cases and many others, almost complete development to the uses for which the property was zoned constituted a vital consideration. In such cases we have held

that the tracts involved took their character from the developed neighborhood of which they were a part. On the other hand, in cases such as *La Salle Nat. Bank* v. *Village of Skokie,* 26 Ill.2d 143, where much of an area remains undeveloped while enjoying a residential classification, in fixing its character we looked to the trend of development along both sides of the street upon which it abuts. We are of the opinion that in view of the rapid development in the west side of the street as compared to that on the east side, the uses across the street are entitled to consideration in characterizing the strip in question.

Although the experts varied as to differences in valuation between residential and business uses, there will be a loss to plaintiffs if the zoning restriction is enforced. Plaintiffs assert that the financial loss to them bears no reasonable relationship to the public welfare. While defendant's witnesses indicated their opposition, some saying they purchased in reliance upon the zoning, their testimony did not fix the extent of damages to property east of the strip. The evidence does not establish any significant or measurable loss in value of such property. The back property line of lots facing a commercial street has been recognized as a suitable zoning boundary. In fact, the city used such a boundary by classifying the east half of the blocks across the street from the subject strip B-4 and by giving the west half of such blocks, which faced the next street to the west rather than Western Avenue, an R-2 classification. This court took a similar view in *Kovack* v. *Village of La Grange Park,* 18 Ill.2d 233, and has approved use of back property lines as boundaries where alleys separated the properties, in such cases as *La Salle Nat. Bank* v. *City of Evanston,* 24 Ill.2d 59 and *La Salle Nat. Bank* v. *Village of Skokie,* 26 Ill.2d 143.

We are of the opinion that plaintiffs' undeveloped lots partake of the commercial character of Western Avenue,

that the decrease in their value under the present zoning classification bears no substantial relation to the public welfare, and that the trial court was justified in its holding that the ordinance was void as here applied.

The judgment of the circuit court of Cook County is accordingly affirmed.

*Judgment affirmed.*