NORTHBROOK TRUST & SAVINGS BANK, Trustee, Plaintiff-Appellee, *v.* THE COUNTY OF COOK, Defendant-Appellant.

First District (4th Division)   No. 62891

Opinion filed April 7, 1977.—Rehearing denied May 5, 1977.

Bernard Carey, State's Attorney, of Chicago (Stuart D. Gordon, Assistant State's Attorney, of counsel), for appellant.

Jack M. Siegel and Theodore J. Novak, both of Chicago, for appellee.

Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago, for intervenor-appellant Village of Northbrook.

Harvey Schwartz, of Chicago, for intervenor-appellant La Salceda Homeowners Assn.

Zachary Ford, of Glenview, for intervenor-appellant Village of Glenview.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This litigation arose out of a complaint for declaratory judgment in which the plaintiff, Northbrook Trust & Savings Bank, sought a declaration that the Cook County zoning ordinance was unconstitutional as it pertained to the subject property. After a bench trial in the circuit court of Cook County, the court declared the zoning ordinance to be unconstitutional as applied to the subject property and held that the proposed use of a general service plan development was a reasonable use of the subject property.

The issues presented for review are (1) whether the plaintiff overcame the presumption of validity attaching to the zoning ordinance, (2) whether the trial court's finding that the classifications of the zoning ordinance intervening between the existing R-3 and the proposed B-4 classification was unreasonable, (3) whether the trial court's restriction in cross-examination was reversible error, and (4) whether the plaintiff exhausted its administrative remedies.

The plaintiff is Northbrook Trust & Savings Bank as trustee for Ernest F. Schultz, Jr., Jens J. Jensen, and E.N. Maisel and Associates, developer of K-Mart Shopping Centers; the defendant is the County of Cook; and the intervenor-defendants are the Village of Northbrook, the Village of Glenview, the La Salceda Homeowners Association, and the American National Bank representing the residential developer of an adjoining parcel of land.

The subject property consists of 17.9 acres located in unincorporated Cook County, contiguous to the corporate limits of the Village of Northbrook. It lies northwest of the intersection of Willow Road and Shermer Road and fronts upon both Willow and Shermer except where separated from the intersection by an intervening parcel approximately 200 feet square which is used as a service station. At the time of trial, the subject property was in an R-3 single-family residence district under the 1960 Cook County Zoning Ordinance and has been operated as a

commercial nursery by the sellers of the property, Robert Gould and Pauline Gould, his wife. The Goulds sold the property for $1,172,000 contingent upon the rezoning of the subject property to permit the uses sought in this section.

The plaintiff applied for reclassification of the subject property to the B-4 General Service District with a special use of a planned development. After a hearing by the Zoning Board of Appeals, the Board of Commissioners denied the application. Immediately prior to trial, the plaintiff proposed a modified site plan. The plaintiff's counsel contended the alterations were insubstantial and asked leave to file an amendment to the complaint to conform with the specifications of the revised site plan. The court entered an order providing that upon agreement of the parties the plaintiff would petition the Cook County Zoning Board of Appeals to obtain a determination as to whether the changes in plaintiff's plan would alter the Board's previous recommendation.

The Board found that there had been no substantial changes in the revised plan and stated that the change in plans would not alter their recommendation. The trial court then proceeded with the trial based upon the amendment to the complaint which contained the modifications to the site plan. The County of Cook and the intervenor-defendants objected and moved to dismiss the complaint for failure to exhaust administrative remedies, but the motion was denied.

Subsequent to the entry of the final judgment order in favor of the plaintiff in this action, the Board of Commissioners of Cook County adopted the comprehensive amendment to the Cook County Zoning Ordinance on January 19, 1976. U der the amendment, the subject property was reclassified to C-4, general commercial district, subject to a special use and to R-6, general residential district, subject to a special use. The zoning district lines correspond exactly to the areas set forth in the plans approved by the trial court and the classifications permit the uses proposed by the plaintiff.

On January 28, 1976, the Village of Northbrook filed a complaint in the circuit court of Cook County against the County of Cook contesting the validity of the comprehensive amendment insofar as it reclassified the subject property to permit plaintiff's proposed development and a number of other commercial uses. Northbrook was thereafter joined in that action by the La Salceda Homeowners Association and the Village of Glenview.

On appeal some of the parties contend the questions in this case are moot because of the change in zoning and others dispute that contention, but we are determining the case on the merits.

Under the modified site plan, the plaintiff proposed to improve the subject property with a combination commercial and multiple-family

development. Approximately 14.7 acres would be improved with 163,000 square feet of commercial building area and the westerly portion of the subject property consisting of 3.2 acres would be improved with one multiple-family building 2½ stories tall consisting of 31 dwelling units. The principal tenants in the commercial area will be K-Mart, a supermarket, other retail operations, and either a bank or a restaurant.

It is proposed that the site will be buffered on the north and the west by a landscaped area 10 feet wide and by a stockade fence 5 feet high. The commercial development will include a parking lot for 910 automobiles and the multifamily portion of the proposed development will include parking 62 cars. There will be three exits onto Willow Road from the development, one from the residential portion, and two from the shopping center. In addition, there will be one exit from the shopping center onto Shermer Road.

The subject property is bounded on the north by the La Salceda Del Norte residential development, an apartment complex of four multifamily structures zoned in the R-6 general residence district of Northbrook. The apartments rent from $240 to $440 per month.

The Villas Salceda, a 61-unit residential development zoned under the R-8 special development district of Northbrook, borders the subject property on the west. The villas, some of which directly abut the subject property, range in price from $79,500 to $96,250.

To the south the subject property borders on Willow Road, and to the south of Willow Road is a presently undeveloped 37-acre tract of land, classified in the R-3 single residence district under the county zoning ordinance.

The area to the east of the subject property across Shermer Road is classified M-1, restricted manufacturing district, except for the northeast corner of the intersection which is zoned B-2, and improved with a service station and a carwash. The M-1 area is improved with the United Parcel Service distribution center which also accommodates parking for many large truck trailers from 40 to 60 feet in length. North of the United Parcel Service facility is Borden-Wyler Foods, a manufacturing and processing plant. La Salceda Del Norte is directly across the street from United Parcel Service and Wyler Foods.

The southeast corner of Willow and Shermer Roads was classified for B-4 general service district under the Cook County Zoning Ordinance and improved with a service station, a restaurant, and a small shopping center known as the Will-Sher Center.

To the southwest of the subject property lies the La Salceda development consisting of 98 four-bedroom homes, the average price of which is $88,000.

Willow Road at this point is a major east-west artery, running from the

Edens Expressway on the east to the Toll Road intersection, 2 miles to the west. It has a speed limit of 50 m.p.h. and is scheduled for widening in 1976 or 1977.

Thomas J. Buckley, a city planning and zoning consultant, testified for the plaintiff. He stated that the three corners of the Willow-Shermer intersection are all characterized by commercial development which is relatively recent, and the proposed use of the subject property was within his definition for the highest and best use of the subject site. He also testified the proposed plan was compatible with surrounding uses. Specifically, he noted the proposed 3.2-acre strip provided a buffer to the multiple-family constructions to the west and that the garages of the La Salceda Del Norte development to the north, with their wall backing to the subject property, provided a visual barrier between the two uses. He concluded that the proposed facility was needed in the area.

Buckley testified that the proposed use of the subject property would not have a detrimental effect on the surrounding land uses in the area, because the commercial character of the intersection had already been established. He said the subject property took its character not only from the gas station but also from the arterial roadway system and from the nature of the intersection being developed on the three corners with commercial establishments. He stated it would be virtually impossible to design a well-planned development under the present zoning.

William A. McCann, a real-estate appraiser and consultant and a member of the American Institute of Real Estate Appraisers, testified for the plaintiff. He stated he considered the location of the subject property as a prime commercial location, fronting on a major arterial road that had recently been improved to accommodate the increasing traffic in the area. He considered the location to be traffic oriented. He also stated the apartments to the north were primarily oriented inward toward the man-made lake, which had been developed there. He considered the trend of the area to be toward commercial development at major intersections and, particularly, along the arterial roads. He stated there would be no adverse influences on the townhouses lying to the west of the subject property and to the apartment buildings lying to the north of the site, and the proposed use would not be depreciatory to surrounding property or be injurious to the health, welfare, and morals of the community.

McCann considered the intervening zoning classifications and concluded that the multiple-family classifications would remove a prime piece of commercial property from future development and would increase the density in the area which would augment the need and demand for additional commercial facilities. He also believed that, under the R-3 classification, the density permitted would not be economically

feasible nor warranted by high density location of the subject property. If the subject property were zoned for something less than B-4, it was his opinion that the value of the property would be diminished by one half and that the subject property could not be profitably developed as zoned.

Paul Box, a consulting traffic engineer, testified for the plaintiff. He stated that a traffic signal would be needed at the Willow Road entranceway to the development, that new turning lanes would be required at both Willow and Shermer Roads, and that interconnected traffic signals should be installed, but that the proposed site plan would not create an undue traffic safety hazard. The site plan represented good, internal relations for parking and commercial vehicle access. John Bleck, a registered professional engineer and consulting engineer licensed in the State of Illinois, testified he had prepared an engineer's feasibility plan for the subject property. He concluded that the available utilities were adequate to serve the subject site and there would be no adverse effect on any adjoining property owners.

David Hoffman of Red Seal Homes, the developer of the properties to the north and west of the subject property, testified for the defendants. On cross-examination, he stated that none of the villas in his development to the north would face the commercial proposal. He also stated that the view from those apartments include the United Parcel truck terminal, a service station, and a carwash.

Thompson Dyke testified for the defendants. He stated that the highest and best use of the subject property was a mixture of single-family, two-family and multiple-family units which depended upon private roads not on the subject property. He thought the proposal would have an adverse effect on the residential developments to the north and west and would have a speculative effect for more rezoning on the south side of Willow Road. Although he had previously indicated to the Northfield Township that five acres of the subject property should be used for neighborhood shopping, he now concluded that the development of two other nearby shopping centers had met the need in the area.

Dyke further testified that Willow Road was a major arterial roadway with heavy traffic and that heavy traffic militates against residential use. He stated that five acres of the subject site were suitable for commercial development, but his proposal for the highest and best use of the subject property was entirely residential. However, he did not consider any impact on schools or on utilities.

Lowell Martin, a resident of the La Salceda subdivision, testified he was the original president of the La Salceda Homeowners Association. He was of the opinion that the proposed development would deflate valuation of properties in the La Salceda development. He took into consideration

lighting, pollution from additional traffic, cars parked in the lot, noise pollution, and dirt and paper. He did not believe there was a need for the proposed development on the subject site.

Leo G. Wilkie was called by the defendants as a traffic engineer. He testified that Willow Road was improved for the last time in 1969, and it is a high volume feeder between the Toll Road and Edens Expressway to the east. The proposed development would have an adverse effect on the intended purposes and functions of Willow Road by introducing another intersection. He concluded that a right-turn lane at Willow and Shermer could not be built to state standards, and that interconnecting the new signal at the shopping center with the existing Willow-Shermer signal would be counterproductive.

James Brown, a registered professional civil engineer, testified for the defendants. He was of the opinion that the subject site could not be adequately served with sewer or water and there would be an inadequate water supply to fight fires. He concluded that instead of a 3-acre foot storage facility for water on the subject property there should be a 4-acre foot storage facility. However, he conceded he had not read the testimony of John Bleck and there were alternative methods of providing an adequate water supply. He testified that the demand on sanitary sewage facilities under commercial use would be less than under multiple-family uses.

Ralph Martin, a real-estate appraiser, testified for the defendants. He stated that in his opinion the highest and best use of the property would be for an R-8 development. He thought the proposed use would have a depreciatory effect both on the properties to the west and southwest and on the north. On cross-examination, he conceded that shopping in a residential area is considered an amenity and that the convenience of shopping could be an appreciation factor for residential homes.

Joseph Abel, a city planner, testified on behalf of the intervenor-defendants. He stated that the highest and best use of the subject property would be for a multiple-family planned development of the character existing to the north and west. It would fall primarily under the R-5 zoning classification of Cook County. However, in March 1973, Abel had testified before the County Zoning Board that the influence of the intersection of Shermer and Willow Roads called for a shopping facility of the neighborhood size of not more than 6 to 8 acres, and the remainder of the subject site should be used for some sort of multiple-family development.

There was varying testimony with respect to the valuation of the subject property under various zoning classifications. McCann testified the property was worth between $270,000 and $360,000 under the existing R-3 classification. He believed that if the property were rezoned in

accordance with the contemplated use it would have a value of over $2,000,000. Under an R-4 classification, it would be worth approximately $360,000 to $450,000; under R-5, from $450,000 to $540,000; under an R-6, from $630,000 to $720,000. It was his opinion that the property could not be profitably developed with any of the intervening uses with the contract price at $1,200,000.

Ralph Martin testified that, under the R-3 single-family zoning, the fair-market value would be $400,000. Under the proposed use the fair value would be $1,200,000. If the property were used for a multiple-family planned unit development, it would have a value of $850,000.

Jens Jensen testified that the Red Seal Homes, the developer of the property to the west, had originally negotiated to purchase the western 3.2 acres for a price of $25,000 per acre for multifamily use. If that price were applied to the entire 17.9 acres, the parcel would be valued at almost $450,000.

■■ The defendants contend the plaintiff did not overcome the presumption of validity which attaches to a zoning ordinance and which must be overcome by clear and convincing evidence. (*Bennett v. City of Chicago* (1962), 24 Ill. 2d 270; *Grobman v. City of Des Plaines* (1975), 59 Ill. 2d 588.) In the case of *County of Cook v. Priester* (1976), 62 Ill. 2d 357, 367-68, the court set forth the standard for determining whether the presumption of validity of a zoning ordinance has been overcome:

> "The State's police power provides the sole justification for the enactment of zoning ordinances which limit a property owner's privilege and right to use his property as he desires. [Citations.] Although a zoning ordinance is presumed valid, this presumption may be overcome by a property owner who shows by clear and convincing evidence that the ordinance as applied to him is arbitrary and unreasonable and bears no substantial relation to the public health, morals, safety or welfare. [Citations.] Stated somewhat differently, the presumption of validity of an ordinance is overcome when it is shown that there is no reasonable basis requiring the restriction imposed and the gain to the public is small as compared to the hardship imposed on the property owner. [Citations.]"

■■■ Even though this court may take judicial notice of the fact that the subject property now has been reclassified to the C-4 general commercial district, and the R-6, general residence district, by Cook County, after reviewing the record we conclude that the presumption of validity of the previous zoning ordinance has been overcome by clear and convincing evidence.

■■ In the case of *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, the court set forth the factors to be used in evaluating the validity of a zoning ordinance: (1) the existing uses and zoning of nearby

property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which destruction of property values of plaintiff promotes the health, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property.

In this case, the intersection of Willow and Shermer Roads is characterized by commercial development. There are three gas stations and a small shopping center at the intersection and on the northwest corner there is an M-1 manufacturing district. Although the defendants argue that Shermer Road is the dividing line between commercial or manufacturing and residential uses, in the case of *Hutson v. County of Cook* (1974), 17 Ill. App. 3d 195, the court recognized the character of Willow Road and sanctioned the installation of a shopping center at the intersection of Willow and Pfingsten Roads to the west of the subject property.

■■ At the subject site Willow Road is a major east-west artery and is scheduled for widening. Although the existence of heavily traveled streets will not necessarily render a zoning classification invalid, the commercial character of an intersection and the high volume of traffic must be taken into consideration. In the case of *Chicago Title & Trust Co. v. Village of Wilmette* (1963), 27 Ill. 2d 116, 124, the court stated:

> "* * * The tremendous volume of traffic at the intersection and the extensive commercial uses at two of its corners are factors which in themselves do much to cause the property to be unfit and undesirable for residence purposes and demonstrate the unreasonableness of the classification. Indeed, those building residence properties in the immediate area have taken great pains to orient and isolate their properties away from the traffic and commercial uses * * *."

It is also important to note the trend of uses in the last five years where there have been no single-family homes built on Willow Road which have direct access to Willow Road.

The evidence shows a significant discrepancy in value between the value of the property as currently zoned and as proposed. There was expert testimony by both the plaintiffs and the defendants that the property was worth between $270,000 and $400,000, as currently zoned, compared to the contract price of $1,172,000. There was no expert testimony either for the plaintiffs or the defendants that the property could be developed economically as zoned and none of the witnesses for any of the parties testified that the existing R-3 zoning was the highest and

best use of the property. Although the property was used as a nursery and cannot be considered vacant, the fact that it remained undeveloped in the face of the trend toward residential development also suggests that the classification was arbitrary.

If the property were restricted in use to that permissible under the existing R-3 zoning, the result would be to significantly reduce the value of the property without any corresponding benefit to the health, morals and general welfare of the public. The testimony at trial was that the trend toward commercial developments at major intersections had already been established in the area, and the immediate intersection was already characterized by commercial and industrial uses. Both of plaintiff's experts testified the site was well suited for the proposed use and one of defendants' experts had once recommended that a shopping center of 6 to 8 acres be placed there. Although a resident of the La Salceda subdivision testified that there would be a depreciatory effect on the value of the surrounding properties, it should be noted that the use of property cannot be restricted or limited merely because neighboring property owners so desire, or because they think it might protect the value of their residences. *Regner v. County of McHenry* (1956), 9 Ill. 2d 577; *Oak Park National Bank v. City of Chicago* (1973), 10 Ill. App. 3d 258; *Stalzer v. Village of Matteson* (1973), 14 Ill. App. 3d 891.

■■ Although there was conflicting testimony with respect to whether the proposed development would have an adverse effect on the surrounding properties, such a conflict does not result in an irrebuttable presumption that the ordinance is valid. (*Stalzer v. Village of Matteson* (1973), 14 Ill. App. 3d 891, 902.) In the case of *Bauske v. Village of Des Plaines* (1957), 13 Ill. 2d 169, 181, the court stated:

> "Mere conflict in testimony as to the highest and best use of property, the impact of the proposed land use on the areas involved or its effect upon property values, does not make irrebuttable the presumption that an ordinance is valid. A difference of opinion does not render the evidence of one party unbelievable, or require a finding that the reasonableness of an ordinance is debatable. In a trial before the court without a jury, the credibility of witnesses and the weight to be accorded their testimony are still to be determined by the trier of fact. Unless manifestly against the weight of the evidence, his findings will not be disturbed."

After a review of the extensive record in this case, we conclude that the testimony of the plaintiff's experts that there would be little or no depreciatory effect on the surrounding property was supported by all the evidence. The intersection is already extensively commercial, the development to the west is buffered by the multifamily unit in the

proposed development, and the property to the north which now overlooks the M-1 area to the east is buffered by the strip of landscaping and the stockade fence of the proposed development and by its own garages which abut the subject property.

■■ The expert testimony with respect to the existence of engineering and traffic problems is also not persuasive. James Brown stated that there was an inadequate water supply for the proposed development, but he also testified he had not reviewed the testimony of the plaintiff's engineer and that there were alternative methods of providing water. It is also apparent that the plaintiff must meet the requirements of both the Metropolitan Sanitary District and the insurance underwriters before the development can be constructed. The testimony with respect to the existence of traffic problems was diametrically opposed, but that factor is not entitled to great weight. In the case of *Berger v. Village of Riverside* (1966), 69 Ill. App. 2d 148, 161, the court stated:

> "As the Supreme Court has said, 'While we have recognized traffic as a factor, it is not in itself entitled to too much weight since it is a problem in all but the most sheltered neighborhoods and is constantly getting worse.' *La Salle Nat. Bank v. Village of Skokie*, 26 Ill. 2d 143, 146, 186 N.E.2d 46, 48 (1962)."

There was testimony from defendants' experts that the highest and best use of the property was multiple-family residential rather than commercial, and the defendants cite the case of *First National Bank v. Village of Northbrook* (1971), 2 Ill. App. 3d 1082, for the proposition that the plaintiffs have the burden of showing not only that the present zoning is unreasonable but that all intermediate zoning classifications are also unreasonable. However, the weight of the authority is against such a proposition. *First National Bank v. Village of Morton Grove* (1973), 12 Ill. App. 3d 589; *Stalzer v. Village of Matteson* (1973), 14 Ill. App. 3d 891; *Aurora National Bank v. City of Aurora* (1976), 41 Ill. App. 3d 239.

■■ The intervenor-defendants contend the court committed reversible error by restricting their cross-examination of plaintiff's witnesses to the assistant State's Attorney pursuant to the guidelines set forth in the case of *Hutson v. County of Cook* (1974), 17 Ill. App. 3d 195. In that case the same trial judge similarly limited cross-examination to the State's Attorney and directed that all questions were to be submitted to and asked by him. On review this court stated:

> "The right of a trial court to control the course of litigation to insure a fair trial for all parties and to avoid undue delay is unquestionable. * * * The [trial] court emphasized that counsel for the intervenors could put on their own witnesses and conduct their own cases * * *.
>
> The procedure of the court was a reasonable exercise of its

discretion in the interest of serving the ends of justice. The defendants failed to point out where they were precluded from having a question asked on cross-examination. Moreover, it is quite clear that restrictions on cross-examination will not be grounds for reversal when all the evidence is before the trial court and the appellate court." 17 Ill. App. 3d 195, 205-06.

Similarly, in this case the court stated that all parties could put on their own witnesses end have an opportunity to submit questions to the State's Attorney for additional cross-examination. The defendants have failed to point out any example of prejudice they have suffered.

The La Salceda Homeowners Association, Inc., appeals separately on the issue of exhaustion of administrative remedies. The Association contends that the Zoning Board of Appeals had no authority to make a determination that changes in the site plan submitted prior to trial were insubstantial and would not require a reapplication as to its new site plan, and, consequently, the plaintiff failed to exhaust its administrative remedies.

■■■ The rule requiring the exhaustion of administrative remedies before challenging the constitutionality of a zoning ordinance established in *Bright v. City of Evanston* (1956), 10 Ill. 2d 178, is not applied where the demonstrated attitude of the local authorities makes it clear that administrative relief or further efforts to obtain it will not be forthcoming. (*Bass v. City of Joliet* (1973), 10 Ill. App. 3d 860; *The County of Lake v. McNeal* (1962), 24 Ill. 2d 253; *Van Laten v. City of Chicago* (1963), 28 Ill. 2d 157.) In *Bass* the court held that the fact that the site plan introduced in evidence was not precisely the same as the plan presented to the Commission was not grounds for holding that no exhaustion had taken place. The court relied on the fact that the issue presented to and decided by the local authorities was precisely the same issue raised in the judicial proceeding: whether the plaintiffs' property should be changed from one classification to another and permitted to be used for a specified use.

In *Sulzberger v. County of Peoria* (1963), 29 Ill. 2d 532, the court held that exhaustion had taken place even though the site plan had been changed. The court stated:

"[N]o useful purpose would be served by requiring reconsideration solely because of minor variations in the physical facts where the fundamental question remains unchanged. (*Wiercioch v. Village of Niles*, 27 Ill. 2d 363.) To do so would defeat one of the purposes of the *Bright* doctrine, (*Bright v. City of Evanston*, 10 Ill. 2d 178) which was to prevent delay in the administration of justice. *Van Laten v. City of Chicago* 28 Ill. 2d 157." (29 Ill. 2d 532, 539-40.)

In *McNeal*, the court stated:

"To compel a property owner to first seek local relief in the fact of the demonstrated attitude of the local authority, would be a patently useless step which would increase costs, promote circuity of action and delay the administration of justice." (24 Ill. 2d 253, 260.)

In this case the defendants have not shown how they have been prejudiced or how a delay in the administration of justice has taken place.

For these reasons the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LINN and JOHNSON, JJ., concur.