WILLIAM L. FURLING, Plaintiff-Appellee, *v.* THE COUNTY OF SANGA-
MON, Defendant-Appellant.

Fourth District   No. 4—83—0668

Opinion filed August 15, 1984.

J. William Roberts, State's Attorney, of Springfield (Elizabeth L. Collins, Assistant State's Attorney, of counsel), for appellant.

Presney, Huffman, Kelly & Appleton, of Springfield (James D. Kelly, of counsel), for appellee.

JUSTICE TRAPP delivered the opinion of the court:

Plaintiff William Furling sued to have the zoning ordinance of defendant Sangamon County declared unconstitutional as applied to his property. Plaintiff also sought to have defendant enjoined from hindering his development of the property. The trial court found no reasonable basis for the present zoning classification and issued the injunction. Defendant appeals, contending the trial court's holding is against the manifest weight of the evidence.

Plaintiff owns 2.36 acres of land on Park Avenue in Sangamon County. The lot would be a rectangle, 240 feet wide and 519.5 feet deep, but the previous owner, Allen Post, sold off the front corner of the lot. This corner, measuring 125 feet wide and 140 feet deep, has a residence on it. Due to the sale, plaintiff's property has a frontage on Park Avenue of only 115 feet. In addition, Post sold another one-tenth of an acre to a neighbor on the north boundary of the land.

Plaintiff bought the property from Post in 1981 for $10,000. At that time, plaintiff knew the land was zoned R-1 for single-family residences. Plaintiff also knew a third party, who had wanted to develop the property, had attempted to get the property rezoned and had failed. The property has always been vacant. Plaintiff desired to build two seven-unit apartment buildings, permissible under a R-3 classification.

Plaintiff filed a petition to change the zoning from R-1 to R-3. The Sangamon County Planning Commission recommended approval of the change because the land could not be economically used under the R-1 classification. The zoning board of appeals, however, recommended denial of the petition. It found the area already had sewer and traffic problems. It further held plaintiff would suffer no hardship because he knew of the zoning restriction when he purchased the property. There were 53 neighbors who signed a petition opposing the rezoning. The Sangamon County Board voted to deny plaintiff's petition due to the traffic and sewer problems. Plaintiff then filed his complaint for declaratory judgment and an injunction.

Plaintiff is an experienced real estate broker and developer. At

trial, he testified his property would be worth $100,000 if classified R-3, and $50,000 if limited to only 14 apartments. He asserted there is a demand for apartments in the area. He also contended taxes would increase $6,000 to $8,000 if he develops the property. His proposed buildings would be set back from Park Avenue and away from all neighboring residences. He planned to fence and screen the lot for privacy and to fit in with the neighborhood. He believed his proposed use would not adversely affect property values in the area. He admitted, however, that his development would cause an increase in traffic in the vicinity.

David Kiliman, assistant director of the Springfield-Sangamon County Regional Planning Commission, had made the original recommendation approving the rezoning. Kiliman based his recommendation on the number of R-3 lots already in the area, which he testified established a trend. Because the area contained many large lots, the tendency was to try to develop those lots for multifamily use. He also based his recommendation on the large size and unusual configuration of plaintiff's property, which did not lend itself to economical development under the R-1 classification. Kiliman testified the highest and best use of plaintiff's property would be for multifamily dwellings.

Kiliman testified the area generally had a drainage problem. He stated the increased roof area and parking lots from plaintiff's development would have some effect on the problem, but he felt the property could still be properly developed. He acknowledged traffic in the area would increase. He also conceded that a rezoning would constitute spot zoning and would not be consistent with the county plan. On the other hand, he testified plaintiff's proposed use would further the Planning Commission's policy of developing urban areas around Springfield rather than agricultural areas.

Plaintiff and Kiliman testified as to the uses surrounding the premises in question. Park Avenue is a dead-end street with many single-family residences, but there are several other uses. Across the street from plaintiff's property lies a pasture with five or six cattle. North of the lot is a four-plex apartment building. Also along Park are a small retail business, a home occupation photographic studio, and a large metal structure used for the storage of game machines. An automobile repair shop, which previously received a use variance, operates on the corner of North Street and Park, some 1,800 feet from plaintiff's lot. About 300 feet south of plaintiff's property, on the opposite side of the street, is a dog training school, a conditional permitted use in R-1 areas.

Next to the dog training school lies a vacant lot changed from R-1

to R-3 in 1973. When granting the petition in 1973, the zoning board of appeals found the general trend in the area was toward multifamily development. It held such use would not injure property values or the public welfare. The board stated the use would be in the public interest, would enhance neighboring property values, and would not increase congestion of traffic. Besides this lot zoned R-3, there are three lots zoned R-2 for duplex development and two lots classified R-4, along Park Avenue.

There are various other uses in the area near plaintiff's property. Approximately 300 feet south of plaintiff's lot is a mobile home park. The mobile home park does not abut Park Avenue; rather, its entrance is on Douglas Avenue, one block west of Park. The mobile home park preexisted the zoning ordinance, yet the land on which it is located was zoned R-3. Bordering plaintiff's lot to the north are several single-family residences, and a duplex, rezoned for R-2 use in 1977. On Centre Street, 600 feet north of plaintiff's parcel, is land zoned R-2 in 1972. A large number of duplexes were built on this street. Along Shiloh Drive, which intersects Park Avenue about 800 to 900 feet north of plaintiff's land, are some four-plexes and tri-plexes, as well as an apartment complex. The city of Springfield lies 600 feet west of plaintiff's property. The land just inside the city limits is zoned R-4, which is the equivalent of defendant's R-3 classification. Most of this land is undeveloped.

Kiliman testified a rezoning normally affects the area within 1,000 feet of the property. In some cases, however, there is an easily identifiable neighborhood that is affected. In this case, Kiliman described that neighborhood as bounded by railroad tracks to the north and south, MacArthur Boulevard to the east, and the large open area inside Springfield to the west. In this neighborhood, there are five other areas that have been rezoned R-3 since the original ordinance was adopted in 1969. One of these sites has a 24-unit apartment complex. Several other use variances have been granted in the area. Besides a second mobile home park, individual mobile homes are scattered throughout the area. Kiliman testified mobile homes are nonconforming uses in the area.

Robert Alvey, district engineer for the Springfield Sanitary District, also testified for plaintiff. He testified the sanitary sewer under Park Avenue was constructed over 40 years ago. The Sanitary District had received many complaints in the past because the sewers had backed up into basements. The Sanitary District remedied the problem by building a release sewer in the area. Alvey testified the number of complaints had been significantly reduced. Due to the way

the pipes were laid, however, the system also suffers from erosion of the crown of the pipes.

The Sanitary District imposed restrictions on the number of sewer hookups per acre. Under this restriction, plaintiff is limited to 14 apartments on his property. Alvey conceded an additional 14 hookups would increase the crown erosion problem to some degree, but he also stated the additional hookups would not appreciably affect either the aging or deterioration of the sewers. In other words, he believed whatever happens will happen regardless of whether plaintiff develops his property. If the problems become too severe, the sewer will be repaired.

Karen Hasara, clerk of the circuit court for Sangamon County, testified for defendant. She had sold real estate and had been a broker prior to becoming clerk. She testified plaintiff's development would cause some devaluation of neighboring property values.

The trial court found in favor of plaintiff. The court concluded the evidence showed that there was no reasonable basis for the zoning classification. The court also found plaintiff's proposed use was reasonable. The court, therefore, held defendant's ordinance unconstitutional as applied to plaintiff's property.

Generally, a zoning ordinance is presumed valid, and a party attacking it bears the burden of establishing its invalidity by clear and convincing proof. (*Harris Trust & Savings Bank v. Duggan* (1983), 95 Ill. 2d 516, 449 N.E.2d 69.) On review, however, the trial court's determination is not to be disturbed unless it is contrary to the manifest weight of the evidence. *Bauske v. City of Des Plaines* (1957), 13 Ill. 2d 169, 148 N.E.2d 584.

Factors that should be considered in determining an ordinance's validity include:

"(1) The existing uses and zoning of nearby property, [citations], (2) the extent to which property values are diminished by the particular zoning restrictions, [citations], (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public, [citations], (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner, [citation], (5) the suitability of the subject property for the zoned purposes *** [citations], and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property." (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65, 69.)

The trial court addressed each of these factors and concluded the ordinance was invalid as applied. Defendant argues the trial court's decision is against the manifest weight of the evidence.

Concerning the first factor, the trial court found the neighborhood surrounding the premises in question, while predominantly single-family residences, was a mixture of various uses including duplex, home occupation and business, mobile home, and multifamily dwellings. We cannot conclude this finding is against the manifest weight of the evidence. Much of the area near plaintiff's land has already been zoned to allow multifamily development. Kiliman stated the trend was toward multifamily use. The zoning board of appeals made a similar finding in allowing a change in zoning in 1973. Since that time, several other lots in the area have been reclassified to allow more intensive uses. While the area is comprised mainly of single-family residences, the rezoning and other nonconforming uses have a substantial bearing on the character of the neighborhood. *Cf. People ex rel. Larsen & Co. v. City of Chicago* (1962), 24 Ill. 2d 15, 179 N.E.2d 676.

The trial court held the present restriction diminished the value of the property. Plaintiff testified as to the lower value of his property under the R-1 classification. Defendant did not contest this point. Defendant does contend, however, that this factor is not decisive because it is present in nearly every zoning case. *First National Bank v. County of Lake* (1955), 7 Ill. 2d 213, 130 N.E.2d 267.

The parties disputed the extent to which the restriction benefits the public. The trial court decided plaintiff's proposal would have no adverse effect on the public health, safety, or welfare. Defendant argues the trial court incorrectly assessed the potential sewer, drainage, and traffic problems in the area. Regarding the sewer and drainage problems, neither Kiliman nor Alvey felt these problems were of sufficient concern to interfere with plaintiff's plans. While both conceded plaintiff's apartments would have some effect on the problems, the same is true of any development on the property.

The parties agreed there will be an increase in traffic due to plaintiff's development. No evidence was presented as to the extent of either the increase or its effect. While traffic is a factor in zoning cases, ordinarily, it is accorded little weight because it is a problem in most areas and is constantly getting worse. *La Salle National Bank v. Village of Skokie* (1962), 26 Ill. 2d 143, 146, 186 N.E.2d 46, 48; see also *La Salle National Bank v. County of Du Page* (1977), 54 Ill. App. 3d 387, 369 N.E.2d 505.

Defendant argues plaintiff's proposed use will decrease area property values. The trial court held otherwise. Plaintiff testified

there would be no decrease, while defendant's witness took a contrary position. In zoning cases, the testimony usually conflicts, and the credibility of the witnesses is of great importance. The trier of fact has a superior position to weigh credibility. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 48, 145 N.E.2d 65, 70.) As the supreme court stated:

> "Mere conflict in testimony as to the highest and best use of property, the impact of the proposed land use on the areas involved or its effect upon property values, does not make irrebuttable the presumption that an ordinance is valid. A difference of opinion does not render the evidence of one party unbelievable, or require a finding that the reasonableness of an ordinance is debatable. In a trial before the court without a jury, the credibility of witnesses and the weight to be accorded their testimony are still to be determined by the trier of fact." (*Bauske v. City of Des Plaines* (1957), 13 Ill. 2d 169, 181, 148 N.E.2d 584, 590-91.)

We cannot conclude the trial court's finding on the third factor is against the manifest weight of the evidence.

■ The trial court concluded that any gain to the public from the present restriction was minimal when compared with the hardship imposed on plaintiff. The trial court found the public would benefit from plaintiff's proposed development. Defendant argues plaintiff knew of the restriction before he purchased, and thus he has suffered no individual hardship. Plaintiff's purchase in the face of the zoning restriction certainly is a factor to be considered. (*American National Bank & Trust Co. v. City of Chicago* (1964), 30 Ill. 2d 251, 254, 195 N.E.2d 627, 629.) Any financial disadvantage that plaintiff might suffer must be viewed as a self-created one. *Maywood Proviso State Bank v. Village of Berkeley* (1965), 55 Ill. App. 2d 84, 204 N.E.2d 144.

While a purchaser who challenges a preexisting zoning ordinance is not in as favorable a position as one who buys prior to a rezoning in reliance on the existing ordinance, he is not precluded from attacking the validity of the ordinance. A zoning ordinance cannot be sustained if it violates the constitution, no matter how long or by whom it is recognized as legal. (*La Salle National Bank v. City of Evanston* (1962), 24 Ill. 2d 59, 64, 179 N.E.2d 673, 676.) The purchaser may prevail when there is no gain to the public as compared with the economic detriment sustained if the restriction is enforced. *Edgemont Bank & Trust Co. v. City of Belleville* (1980), 85 Ill. App. 3d 665, 675, 407 N.E.2d 159, 167; *Fay v. City of Chicago* (1979), 71 Ill. App. 3d 603, 610, 390 N.E.2d 125, 131.

Thus, while plaintiff suffered no individual hardship, the value of his property decreased without any corresponding benefit to the public. Furthermore, plaintiff asserted his development would promote the public welfare by meeting the demand for apartments and by increasing the taxes collected on the property. The trial court found there was a need for apartments in the area.

■ The evidence demonstrated the highest and best use of the property involved was for multifamily dwellings. The trial court found the land was not suitable for single-family or duplex residences because of its unusual configuration and narrow frontage. If the individual characteristics of a tract make it unsuitable for the use to which it is restricted, then the ordinance classifying it is arbitrary in the absence of some substantial gain to the public accruing from its enforcement. *La Salle National Bank v. City of Evanston* (1962), 24 Ill. 2d 59, 63, 179 N.E.2d 673, 675.

Defendant contends a single-family residence can be built on the property; therefore, it is suitable for R-1 purposes. To show an ordinance is arbitrary in its application, however, the law does not require the land to be totally unsuitable for the use to which it is restricted. It is sufficient if a substantial decrease in value results from a classification bearing no substantial relation to the public welfare. *People ex rel. Larson & Co. v. City of Chicago* (1962), 24 Ill. 2d 15, 19, 179 N.E.2d 676, 678; *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 48, 145 N.E.2d 65, 69-70.

■ Defendant points out that only one house can be built on the property because of the narrow frontage. Defendant's ordinance requires 80 feet of frontage for a single-family residence. The narrow frontage resulted from the sale by the previous owner. Because plaintiff stands in the place of the previous owner, he is estopped from claiming the one-home restriction on his lot is invalid. (*Reitman v. Village of River Forest* (1956), 9 Ill. 2d 448, 137 N.E.2d 801.) The unsuitability for single-family use, however, stems not only from the narrow frontage, but also from the large lot size. Only three houses could have been built on the original lot. The lot would have had to have been divided into three sections, each 80 feet wide and 519.5 feet deep. The land was unsuitable under its restriction even before the prior sale. While the previous sale may have added to the problem, the lot's unsuitability for single-family use is inherent in its size and shape. *Cf. La Salle National Bank v. City of Evanston* (1962), 24 Ill. 2d 59, 65, 179 N.E.2d 673, 676.

■ The final factor concerns the length of time the property has remained vacant as zoned. The trial court noted the property has al-

ways been vacant. Defendant maintains much of the area is unimproved; therefore, the vacancy is not attributable to the zoning restriction. Plaintiff's attempt, however, is the second attempt to develop this property. The previous attempt failed solely because of the zoning restriction. The public receives no substantial benefit in keeping this land unimproved. *Liebling v. Village of Deerfield* (1961), 21 Ill. 2d 196, 201, 171 N.E.2d 585, 587.

The evidence clearly shows the present classification denies the property its highest and best use. The proposed use will only minimally interfere with the use of other property. Hence, the presumption of validity has been overcome. (*First National Bank v. City of Springfield* (1974), 22 Ill. App. 3d 22, 27, 316 N.E.2d 648, 652.) The trial court properly considered all the relevant factors, and its final determination is not contrary to the manifest weight of the evidence.

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

MILLS, P.J., and GREEN, J., concur.